**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application of FORENSIC NEWS LLC and
SCOTT STEDMAN for an Order Pursuant to 28
U.S.C. § 1782 to Conduct Discovery for Use in a
Foreign Proceeding.

Case No.  22-mc-347

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'**
**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

I.   Forensic News Investigates And Publishes Reports Highlighting Soriano's
     Connections To Russian And Israeli Elite Implicated In Russian Efforts To
     Interfere With The 2016 U.S. Presidential Election ......................................... 4

II.  Soriano Threatens Petitioners With Litigation And Ultimately Sues Them In
     England Despite Their Lack Of Any Connections To That Forum ............................. 6

III. Petitioners Successfully Apply For Discovery From Three Former USG
     Employees Or Contractors And Now Seek Discovery From HSBC USA .................. 10

LEGAL STANDARD ....................................................................................................... 12

ARGUMENT .................................................................................................................... 13

I.   Petitioners' Application Satisfies The Statutory Requirements For Discovery
     Pursuant To 28 U.S.C. § 1782 ....................................................................... 13

II.  The *Intel* Discretionary Factors All Favor Granting Petitioners' Application.............. 16

CONCLUSION................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017)...............................................................15

*In re Al-Attabi*,
    2021 WL 4027021 (S.D.N.Y. Sept. 3, 2021)......................................14

*In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*,
    2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ....................................14

*In re Application of Patokh Chodiev*,
    2021 WL 3270042 (S.D.N.Y. July 30, 2021)......................................18

*In re Batbold*,
    2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021)........................................18

*In re Bloomfield Inv. Res. Corp.*,
    2018 WL 6418421 (E.D.N.Y. Dec. 6, 2018) ................................17, 18

*In re BNP Paribas Jersey Tr. Corp.*,
    2018 WL 895675 (S.D.N.Y. Feb. 14, 2018)........................................19

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012)...........................................................12, 19

*In re Matter of Degens*,
    2020 WL 4252725 (S.D.N.Y. July 24, 2020) ................................14, 21

*In re del Valle Ruiz*,
    342 F. Supp. 3d 448 (S.D.N.Y. Oct. 19, 2018), *aff'd sub nom.* 939 F.3d 520
    (2d Cir. 2019)......................................................................................12

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019)...............................................................14

*In re Doosan Heavy Indus. & Constr. Co.*,
    2020 WL 1864903 (E.D.N.Y. Apr. 14, 2020) .....................................21

*In re Dreymoor Fertilizers Overseas Pte. Ltd.*,
    2022 WL 2702617 (S.D.N.Y. July 12, 2022) ......................................20

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995).........................................................17, 22

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Fed. Repub. of Nigeria v. VR Advisory Servs., Ltd.*,
   27 F.4th 136 (2d Cir. 2022) ................................................................................18

*In re First Monolith Inc.*,
   2021 WL 1093658 (S.D.N.Y. Feb. 1, 2021) .........................................................21

*Goenechea v. Davidoff*,
   2016 WL 560689 (D. Md. Feb. 11, 2016) ......................................................3, 20

*In re Gorsoan Ltd.*,
   2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ......................................................17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)................................................................................... *passim*

*In re Iraq Telecom Ltd.*,
   2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019) ......................................................17

*In re JSC BTA Bank*,
   577 F. Supp. 3d 262 (S.D.N.Y. 2021)......................................................14, 16, 18

*In re Kreke Immobilien*,
   2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ........................................................18

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014)...................................................................18

*In re Malev Hungarian Airlines*,
   964 F.2d 97 (2d Cir. 1992)..................................................................................12

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)..................................................................15, 16, 19, 22

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
   2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) ......................................................19

*In re OOO Promneftstroy*,
   134 F. Supp. 3d 789 (S.D.N.Y. 2015)..................................................................17

*Trout Point Lodge, Ltd. v. Handshoe*,
   729 F.3d 481 (5th Cir. 2003) ...............................................................................2

*In re Vale S.A.*,
   2020 WL 4048669 (S.D.N.Y. July 20, 2020) ......................................................18

*In re YS GM Marfin II LLC*,
   2022 WL 624291 (S.D.N.Y. Mar. 2, 2022) .........................................................17

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Statutes**

28 U.S.C. § 1782 ....................................................................................................3, 14, 17, 20

28 U.S.C. § 4101 *et. seq.* ...............................................................................................................3

**Other Authorities**

Findings to Pub. L. 111-223, § 2, 124 Stat. 2380 (2010) ...............................................................2

**Rules**

Fed. R. Civ. P. 26(b) .............................................................................................................19

N.Y. Civ. R. L. § 76-a(2) .........................................................................................................21

## INTRODUCTION

Forensic News LLC and its journalist-founder Scott Stedman (together, "Petitioners")
seek this Court's leave under 28 U.S.C. § 1782 to take discovery in aid of their defense of a
defamation action filed in England by British-Israeli "security consultant" Walter Soriano.  *See
Soriano v. Forensic News LLC*, Claim No. QB-2020-002450 (the "English Defamation Action").
In the English Defamation Action, Soriano claims Petitioners should be held liable for statements
made in a series of articles they published discussing associations between Soriano and his
security consultancy firm USG Security Limited ("USG"), on the one hand, and core figures
associated with alleged Russian interference in the 2016 U.S. presidential election, on the other.

This is the fourth Section 1782 petition arising out of the English Defamation Action.
Each of the prior three applications was granted, and Petitioners ultimately recovered critical
information from three former USG employees or contractors located in the United States to aid
in Petitioners' defense abroad.  In this fourth Section 1782 application, Petitioners seek financial
records from HSBC Bank USA, N.A. ("HSBC USA").  HSBC USA's records are relevant to the
English Defamation Action because HSBC USA has cleared U.S.-dollar-denominated wire
transfers to and from USG.  HSBC USA therefore possesses records reflecting those transactions
as well as other relevant financial information.  The documents Petitioners seek from HSBC
USA would reveal details about USG's receipt and transfer of funds, potentially proving USG's
business relationships with Russian oligarchs, their representatives, and other entities and
individuals who may have played a role in election interference and other events described in
Petitioners' articles.  Petitioners anticipate that this documentary evidence will significantly
assist them in their efforts to defeat the English Defamation Action, which is a paradigmatic

strategic lawsuit against public participation ("SLAPP").  The discovery Petitioners seek will help them vindicate the reporting that forms the heart of that case.

Forensic News is an investigative journalism platform whose mission is to deliver original long-form reporting focused on national security, espionage, corporate, and political issues.  Walter Soriano is a British-Israeli "security consultant" with ties to the Russian oligarchy.  Forensic News learned of Soriano when a *Politico* report identified him as a person of interest in the Senate Intelligence Committee's investigation into Russian interference in the 2016 U.S. presidential election.  Forensic News picked up on the *Politico* report and ran with it.  Forensic News and its journalists ultimately discovered and reported on a web of shadowy connections and secretive dealings that were forged largely through USG.  Petitioners' investigations culminated in the publication of multiple news articles about Soriano and his ties to core figures associated with alleged election interference, including Dmitry Rybolovlev and other Russian oligarchs.

Although Forensic News is based in the United States, is staffed by American journalists, and reports on issues of concern to the American public (its primary audience), Soriano cracked open the well-worn playbook of foreign oligarchs unwilling to face the crucible of a full and fair American-style press.  He sued Forensic News, Mr. Stedman, and other contributing journalists in England—a jurisdiction that has far less robust speech protections than the United States.  As Congress has observed, such "libel tourism" is intended to "'obstruct[]' the free expression rights of domestic authors and publishers" and "'chill[]' domestic citizens' First Amendment interest in 'receiving information on matters of importance.'"  *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2003) (quoting Findings to Pub. L. 111-223, § 2, 124 Stat. 2380 (2010)).  Congress has ensured that any judgment Soriano procures will ultimately be unenforceable in the

United States through the Securing Protection of Our Enduring and Established Constitutional Heritage ("SPEECH") Act of 2010. The SPEECH Act broadly renders unenforceable foreign judgments for defamation or associated claims, particularly strike suits like Soriano's that are designed to chill reporting on matters of public concern. *See, e.g.*, 28 U.S.C. § 4101 *et. seq.*

But even if any judgment against Petitioners will be unenforceable in the United States, the English Defamation Action is proceeding apace. Petitioners therefore seek discovery from this Court to aid them in their defense. *See Goenechea v. Davidoff*, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016) (granting Section 1782 application despite possibility that foreign judgment would be unenforceable under the SPEECH Act). The discovery Petitioners seek pertains to two key components of their defense. *First*, Petitioners can defeat Soriano's claims if Petitioners prove their reporting was truthful and accurate. *Second*, Petitioners will likely have the opportunity to cross-examine Soriano at trial, putting his credibility at issue. The HSBC USA records Petitioners seek will help Petitioners both prove Soriano's associations as Petitioners reported them and rebut Soriano's false denials of those associations.

This application—like each of Petitioners' three prior successful Section 1782 applications—meets the statutory prerequisites and discretionary factors articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246–47 (2004). Petitioners are defendants in a foreign action, seek discovery from an entity that resides or is found in this judicial district, and seek discovery for use in a foreign proceeding. Specifically, Petitioners will use the discovery they obtain from HSBC USA—an entity headquartered in this district—to defend against Soriano's claims in the English tribunal. Each of the discretionary factors articulated in *Intel* also favors awarding discovery. *Id.* at 264–65. HSBC USA is not party to the English Defamation Action, the English tribunal is receptive to U.S. judicial assistance, this application

does not seek to circumvent any English proof-gathering restrictions, and the targeted discovery sought will not be unduly burdensome for HSBC USA to compile and produce. These factors apply exactly the same way they did in Petitioners' recent, successful Section 1782 applications. There, Judge Lehrburger of this Court and Judges Matsumoto and Merkl of the Eastern District of New York granted Petitioners' applications in full.

Petitioners' need for HSBC USA's records is urgent. Soriano has applied in the English court to "strike out" Petitioners' truth defense, and the English court recently scheduled a preliminary "trial" on that application and other issues for March 2023. Petitioners must therefore marshal evidence in support of their truth defense well before March 2023. Petitioners respectfully ask this Court to grant their petition and give them leave to serve discovery requests on HSBC USA.

## FACTUAL BACKGROUND

I. **Forensic News Investigates And Publishes Reports Highlighting Soriano's Connections To Russian And Israeli Elite Implicated In Russian Efforts To Interfere With The 2016 U.S. Presidential Election**

Forensic News is an independent news outlet based in the United States that covers national security and intelligence issues across the world. Declaration of Patrick Doris ("Doris Decl.") ¶¶ 4–6. Scott Stedman founded Forensic News in April 2019 to provide free access to well-sourced, long-form investigative journalism. *See* Ex. 2 at 1–3.[1] Stedman is an investigative journalist whose work has been cited in the *Washington Post*, BBC, CNN, *The Guardian*, and VICE. *See* Ex. 3 at 1.

---

[1] "Ex." refers to the exhibits attached to the Declaration of Anne Champion, filed in conjunction with this application.

Forensic News first became interested in Walter Soriano after he was invited to testify before the U.S. Senate Intelligence Committee about potential Russian interference with the 2016 presidential election.  *See* Ex. 4 at 6; Ex. 5 at 2.  In April 2019, the Senate Intelligence Committee requested an interview and documents relating to any communications Soriano had with over a dozen individuals and companies, including Russian oligarch Oleg Deripaska, General Michael Flynn, Paul Manafort, and Steve Bannon.  *See* Ex. 4 at 6–7; Ex. 5 at 2–3. Soriano never responded to the Committee's request.  *See* Ex. 4 at 51.

Forensic News soon began publishing a series of articles about Soriano.  The reporting was groundbreaking.  Over the course of its reporting series, Forensic News uncovered Soriano's deep ties to the power centers of the Israeli and Russian governments.  These ties were most often forged through work Soriano performed through his private security firm, USG.  Ex. 4 at 52.  Through USG, Soriano served as a "key middle man" between Russia's wealthiest oligarchs and a network of cyber spies from Israel and elsewhere.  *See* Ex. 4 at 48–49; Ex. 6 at 2–3.  These connections became the focus of Forensic News' reporting.

Forensic News' articles described Soriano's connections to several Russian oligarchs, including Deripaska, Rybolovlev, and Roman Abramovich.  Deripaska is an aluminum magnate who has close ties to Russian president Vladimir Putin and who was the subject of intense scrutiny for his involvement in Russia's 2016 election interference activities.  *See* Ex. 4 at 49; *see also* Ex. 7 at 1–4.  On Deripaska's behalf, Soriano was allegedly involved in orchestrating the arrest of Nastya Rybka, a former romantic partner of Deripaska's who claimed to have audiotapes showing coordination between the Trump campaign and Russia.  *See* Ex. 4 at 57–58. As Forensic News reported, Soriano assisted Deripaska in his efforts to silence Rybka and prevent her from releasing information.  *See id*.  Rybolovlev, another oligarch, is one of the

wealthiest people in Russia.  *See id.* at 8.  Forensic News reported that Rybolovlev hired Soriano

to assist with multiple legal disputes in and around 2016, including a dispute with Swiss banker

and art dealer Yves Bouvier.  *See id.* at 8–9; *see also* Ex. 8 at 5.  Based on a court filing from

Israeli journalist Ravi Drucker (whom Soriano also sued for libel), Forensic News reported that

Soriano offered Rybolovlev "sophisticated tracking, data collection and data acquisition through

various technological means, such as hacking, eavesdropping, and more."  *See* Ex. 4 at 8.

Soriano denies that he ever "provid[ed] private illegal hacking and spying services."

Ex. 9 ¶ 12.6.3.   But as Forensic News reported, Soriano did provide these services—and he did

so with the help of cyber espionage and surveillance firms from Israel and elsewhere.  Ex. 4 at

49–50.  To make connections with these firms, Soriano turned to Israeli private detective Aviram

Azari, who, according to the *New York Times*, "served in the 1990s in an Israeli police unit that

focused on covert surveillance [and] was one of the most sought-after private investigators in

Israel."  Ex. 10 at 2; *see also* Ex. 11 at 7 (65:14-22).  According to a friend of Azari's, "[h]e was

often hired by customers to gather intelligence about their business competitors."  Ex. 10 at 2.

Azari operated through an Israeli company called Aviram Hawk – Consultant Investigations &

Operations.  He was also affiliated with a Grenadine company called Panolos Ltd.  *See* Ex. 12 at

3, 7.  Azari may have performed services for USG on behalf of clients including Abramovich

and Deripaska.  *See* Ex. 11 at 6 (49:3–15); *id.* at 9 –10 (67:23–68:8).

## II.   Soriano Threatens Petitioners With Litigation And Ultimately Sues Them In England Despite Their Lack Of Any Connections To That Forum

As Forensic News revealed more of Soriano's clients, Soriano contacted Petitioners

through counsel.  He threatened to sue Forensic News and its journalists.  *See* Ex. 4 at 53.  And

he demanded they cease their reporting.  *See id.* at 32.  Soriano's tactics were not new; he has

repeatedly attempted to use litigation to silence journalists in the past.  By way of example,

Soriano brought libel claims against two investigative journalists and multiple Israeli publications in Israeli court.  *See id.* at 63; Ex. 13 at 2.  He challenged reports that he spearheaded efforts to collect compromising information on police investigators who were investigating then-Prime Minister Netanyahu.  The journalists ultimately prevailed.  *See* Ex. 4 at 67.  Soriano also sued Twitter for hosting Tweets and news stories he perceived as unflattering.  *See id.* at 62.

Despite Soriano's threats, Forensic News stood by its reporting.  It refused to be intimidated.  And it declined either to cease its reporting or to self-censor by taking down its groundbreaking pieces.

On July 14, 2020, Soriano initiated legal proceedings in the High Court of Justice, King's Bench Division, in London.  Doris Decl. ¶¶ 1, 8.  Soriano named as defendants Forensic News and four contributing journalists (including Mr. Stedman) who are American citizens and reside in the United States.  *Id.* ¶¶ 4, 5, 7.[2]  He asserted claims for data protection under the General Data Protection Regulation ("GDPR"), malicious falsehood, harassment, misuse of private information, and libel.  *Id.* ¶ 8; *see generally* Ex. 9.  Soriano sought not only injunctive relief but also monetary damages, including "aggravated damages."  *See* Ex. 9 at 29.

Soriano's claims focused primarily on six investigative articles and one podcast that Petitioners authored, published, or participated in between 2019 and 2020.  *See id.* at 5–8; Doris Decl. ¶ 8.  According to Soriano, the publications falsely stated or implied (among other things) that he (i) "is the middle man for a network of illegal Israeli hacking firms"; (ii) "hires hackers to illegally spy on his clients' enemies"; (iii) makes or has made illegal arrangements, including

---

[2]  Soriano also brought claims against Richard Silverstein, a journalist unaffiliated with Forensic News.

"illegal hacking and spying services," for his clients; and (iv) worked directly for Deripaska, Netanyahu, and Rybolovlev (among others).  *See* Ex. 9 ¶¶ 11.6–11.7, 12.6–12.8.

Because Petitioners reside in the United States, Soriano had to apply for the High Court's permission to serve them in the United States.  *See* Doris Decl. ¶ 9.  Petitioners opposed the application, arguing that the High Court lacked jurisdiction.  *Id.* ¶ 10.  On January 15, 2021, the High Court issued a judgment denying Soriano permission to serve Petitioners with his claims for GDPR violations, malicious falsehood, and harassment.  *See id.* ¶ 11.  The High Court concluded that Soriano failed to demonstrate a real prospect of success on any of these claims, and that certain claims were "based on little more than wild speculation."  Ex. 14 ¶¶ 69, 96–99, 103.  But the High Court allowed Soriano to serve Petitioners in the United States with claims for libel and misuse of private information.  *See* Doris Decl. ¶ 11; *see also* Ex. 14 ¶¶ 164, 169.  It also concluded that the courts of England and Wales were the appropriate forum for trial of these claims.  Ex. 14 ¶ 164.

The parties cross-appealed.  *See* Doris Decl. ¶ 12.  On December 21, 2021, the Court of Appeal affirmed the High Court's decision to let Soriano serve his claims for libel and misuse of private information.  *See id.*; Ex. 15 ¶¶ 71–72, 123.  It also reversed the High Court's dismissal of the GDPR data protection claim, holding, based on the preliminary record, that Forensic News' activity fell within the territorial scope of the GDPR.  *See* Doris Decl. ¶ 12; Ex. 15 ¶¶ 95, 103–04, 123.  The appellate court's ruling on the GDPR claim has been called a "landmark." Ex. 17 at 1.  Because Forensic News' connections to the United Kingdom and the European Union are so sparse, commentators have noted that subjecting Forensic News to the GDPR's territorial reach "will have far-reaching implications for all US media corporations."  Ex. 16 at 1. As Soriano's counsel proclaimed, the appellate decision "is of historic importance to all US

media: if you publish an article about a UK citizen, even if you are physically only based in the US, you may be sued in the UK for breach of data protection laws."  Ex. 17 at 1.

Merits proceedings on Soriano's three remaining claims against Petitioners are underway.[3]  Those claims include Soriano's assertions that Petitioners committed libel, misused private information, and violated the GDPR.  Doris Decl. ¶¶ 12, 14.  Relevant to this application, Petitioners can defeat certain of those claims by demonstrating that the statements contained in their reporting were true and accurate.  *See id.* ¶ 27.  Under English law, there is a presumption that an allegedly libelous statement is false—meaning that the *defendant* has the burden of proving otherwise.  *Id.*  Accordingly, Petitioners will have the evidentiary burden of proof with respect to their truth defense.  *Id.* ¶¶ 27, 36–37.  Petitioners also expect Soriano to testify at the ultimate trial in the English Defamation Action and to deny the allegations made in Forensic News' reporting.  *Id.* ¶ 29.  Soriano's credibility will therefore be directly at issue, and Petitioners will have a greater chance of success if they can persuade the High Court not to believe Soriano's testimony following vigorous cross-examination.  *Id.*

Petitioners' Defense in the English Defamation Action was filed on March 16, 2022.  On June 21, 2022, the High Court set for trial two preliminary applications filed by Soriano.  Ex. 18 at 1–2.  The first is Soriano's application to determine the natural and ordinary meanings of Petitioners' publications and whether they are defamatory (the "Meaning Determination Application").  *Id.*  The second is Soriano's application to strike out certain of Petitioners' defenses, including that Petitioners' reporting was true (the "Strike Out Application").  *Id.*  The two-day preliminary trial addressing both of these issues is scheduled for March 2 and 3, 2023.

---

[3]  In June, Soriano settled his claims against two of the journalist defendants.  His claims against Petitioners, however, remain pending.

*See* Doris Decl. ¶ 17.  At this preliminary "trial" the judge will adjudicate these issues based on

submitted documentary evidence and testimony.  *See id.*

### III.     Petitioners Successfully Apply For Discovery From Three Former USG Employees Or Contractors And Now Seek Discovery From HSBC USA

Petitioners have already filed three successful Section 1782 applications arising out of the

English Defamation Action.  *First*, on March 31, 2022, Petitioners filed an application in the

U.S. District Court for the Eastern District of New York seeking discovery from Richard

Frankel.  Ex. 19 at 16.  Frankel is a former FBI agent whom Soriano hired in 2016 to establish a

U.S. presence for USG.  *Id.*  On April 4, 2022, Judge Matsumoto granted the Section 1782

application, holding that Petitioners satisfied the relevant statutory and discretionary factors and

granting Petitioners leave to take discovery from Frankel.  Ex. 20 at 1–2.  On May 24, 2022,

Petitioners' counsel deposed Frankel.  Frankel testified about his employment at USG, USG's

work for Rybolovlev in the art dispute case, and Soriano's connections to Prime Minister

Netanyahu.  *See generally* Ex. 21.  He also discussed conducting investigations on behalf of

Rybolovlev in the scope of his employment at USG.  *See id*. at 9 (60:5–23).

*Second*, on May 25, 2022, Petitioners filed an application in the U.S. District Court for

the Eastern District of New York to take discovery from Aviram Azari.  *See* Ex. 24 at 17.  Azari

is an Israeli private detective who has reportedly connected Soriano with cyber espionage and

surveillance firms to serve Soriano's and USG's clients.  *See id.* at 11.  Soriano and Azari have

reportedly worked together for a decade, including on matters for Rybolovlev, Deripaska, and

other oligarchs.  *See id.*  Azari has since been convicted in the Southern District of "wire fraud,

identity theft and hacking-related charges after hiring Indian spies to target 'a large number' of

people."  Ex. 22 at 17.  He is awaiting sentencing.  On August 16, 2022, Judge Merkl of the

Eastern District granted Petitioners' application and granted Petitioners leave to seek discovery

from Azari.  *See* Ex. 25 at 1–2.  On November 2, 2022, Petitioners' counsel deposed Azari.

Azari selectively invoked his Fifth Amendment right against self-incrimination in response to

questions to which his truthful answer would be anything other than "no" or "I don't know,"

including questions about the work he performed for USG.  *See generally* Ex. 11; *see id.* (37:12–

39:25) ("I can answer no, or I don't know.  [Or] I can use this [Fifth Amendment objection]. . . .

I'm going to say no and I don't know.").

   *Third*, on August 23, 2022, Petitioners filed in the U.S. District Court for the Southern

District of New York an application to take discovery from Mark Rossini, whom Frankel had

identified as another former USG employee.  *See* Ex. 22 at 17–18.  Unlike Frankel, Rossini's

role at USG involved extraterritorial work.  *Id.* at 18.  Rossini's tenure at USG overlapped with

several of the key events described in Petitioners' articles—events in which Soriano denies

involvement—including the arrest of Deripaska's mistress and an investigation into

representatives of a company belonging to Rybolovlev.  *Id.*  Judge Lehrburger in this District

granted Petitioners' application on October 19, 2022.  *See* Ex. 23 at 2.

   After Petitioners filed the Rossini application, Petitioners' counsel came to learn that

HSBC USA may possess evidence and records relevant to Petitioners' defense in England.

Specifically, Petitioners' counsel came to learn that HSBC USA served as the correspondent

bank that cleared U.S.-dollar-denominated wire transfers on behalf of USG.  Champion Decl.

¶ 2.  HSBC USA therefore likely possesses documents reflecting these transactions and other

transactions between USG and its clients (including Russian oligarchs and their representatives).

Ex. 9 at ¶ 11.7.  These financial records will assist Petitioners in defending the English

Defamation Action by helping them prove the associations between Soriano and the figures

about which Petitioners reported and in helping them undermine Soriano's denial of those associations.

## LEGAL STANDARD

Section 1782(a) provides that a federal district court may order discovery for use in a foreign or international tribunal from persons residing or found in the court's judicial district. Section 1782 was designed "to liberalize the assistance given to foreign and international tribunals." *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 453 (S.D.N.Y. Oct. 19, 2018), *aff'd sub nom.* 939 F.3d 520 (2d Cir. 2019); *see also In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (noting Congress's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts"). "In pursuit of these . . . goals, the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (quotation marks omitted).

Section 1782(a) has three *prima facie* statutory requirements. *First*, the applicant must be an "interested person" in the foreign proceeding. *Intel Corp.*, 542 U.S. at 246. *Second*, the person from whom discovery is sought must reside in or be found in this district. *Id*. *Third*, the discovery must be for use in a proceeding in a foreign tribunal. *Id.* When all three requirements are met, the decision to grant the discovery request rests with the district court's discretion, which is guided by four factors. *Id.* at 260–61, 264–65. Specifically, in considering whether to grant the requested discovery, this Court should consider: (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding, and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or

policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome.  *Id.* at 264–65.

## ARGUMENT

Petitioners seek targeted documentary discovery from HSBC USA relating to USG and Soriano.  HSBC USA has cleared multiple wire transfers to and from USG during the relevant time period.  *See* Champion Decl. ¶ 2.  Petitioners therefore seek from HSBC USA documents reflecting USG's and/or Soriano's banking activity, which will help Petitioners prove the associations between USG, Soriano, and the Russian oligarchs and hacking firms about which Petitioners reported.  These financial records will also likely lead to the discovery of other highly probative evidence and could help Petitioners identify other potential witnesses who transacted with USG during the relevant time period.  Accordingly, HSBC USA's records are not only relevant but critical to Petitioners' efforts to defeat Soriano's SLAPP suit—an action that would not even come close to prevailing in an American court.

Three courts in the Southern and Eastern Districts have previously concluded that Petitioners met all of the requirements for discovery under Section 1782 and that the balance of the discretionary factors weighed in favor of permitting discovery for the same English proceeding.  *See* Exs. 20, 23, 25.  Petitioners respectfully submit that this Court should do the same.

## I.   Petitioners' Application Satisfies The Statutory Requirements For Discovery Pursuant To 28 U.S.C. § 1782

Just as three courts have found with respect to Section 1782 applications arising out of the English Defamation Action, Petitioners' application here easily meets the three *prima facie* statutory requirements set forth in Section 1782.  *See* Ex. 20 at 1; Ex. 23 at 1–2; Ex. 25 at 1.  We take each in turn.

*1. **Petitioners Are Interested Persons**.* First, Petitioners are "interested persons" in a foreign proceeding in England. Specifically, they are defendants. As the Supreme Court explained in *Intel*, "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256. As defendants in the English Defamation Action, Petitioners are undisputedly "interested person[s]" who can seek Section 1782 discovery. *See* Ex. 23 at 1 (finding that "both Forensic News, LLC and Scott Stedman" are "interested person[s]"); *see also* Ex. 20 at 1; Ex. 25 at 1.

*2. **HSBC USA Resides Or Is Found In This District**.* Second, HSBC USA resides or is found in the Southern District of New York. An entity is "found" in the district where it is incorporated or headquartered. *See In re Al-Attabi*, 2021 WL 4027021, at *2 (S.D.N.Y. Sept. 3, 2021) (holding that respondent banks were "'found within' this district within the meaning of section 1782" because they "ha[d] headquarters in this district"); *In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (holding that respondent "McKinsey maintains its headquarters in New York, and thus is 'found' within this district"); *see also In re del Valle Ruiz*, 939 F.3d at 523, 528 (the "reside[] or is found" statutory "language extends § 1782's reach to the limits of personal jurisdiction consistent with due process"). Here, HSBC USA maintains its headquarters at 452 Fifth Avenue in New York City and regularly conducts business in this district. *See* Doris Decl. ¶ 24; Ex. 26 at 1. Moreover, the discovery sought arises from HSBC USA's banking activity within this district. Petitioners therefore satisfy this requirement. *See In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021) (holding that HSBC USA and other respondent banks were found in this district because they "maintain[ed] an office," in most cases their headquarters, and "d[id] business (including correspondent and intermediary banking)" here); *In re Matter of Degens*,

2020 WL 4252725, at *3-4 (S.D.N.Y. July 24, 2020) (holding that HSBC USA was found in this district).

3. ***The Discovery Sought Is For Use In A Foreign Proceeding.***   Petitioners satisfy Section 1782's final statutory requirement because the discovery they seek is "for use in a foreign tribunal"—namely, the High Court in the English Defamation Action.   To meet the "for use in a foreign tribunal" requirement, the applicant must demonstrate the "ability to inject the requested information into a foreign proceeding" and that the "requested discovery is something that will be employed with some advantage or serve some use in the proceeding."   *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (internal quotations omitted).   The discovery need not be strictly necessary to the applicant's case; the applicant need only show that the materials could "increase her chances of success."   *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015).

Here, the discovery sought would plainly increase Petitioners' "chances of success" in the English Defamation Action—in fact, it may well be dispositive of certain claims.   *See* Doris Decl. ¶¶ 26, 29–30.   One of Petitioners' primary defenses is that none of the challenged statements is false.   Under English law, "[i]t is a defence to an action for defamation for the defendant to show that the imputation conveyed by the statement complained of is substantially true."   *Id.* ¶ 27 n.2 (quoting Section 2 of the English Defamation Act).   The financial records Petitioners seek could support the truth of many of alleged statements in Forensic News' reporting: that Soriano is the "middle man" for a network of Israeli hacking firms, Ex. 9 ¶ 11.6.2; that Soriano "worked directly for Oleg Deripaska and Israeli Prime Minister Benjamin Netanyahu," *id.* ¶ 12.8.1; that Soriano has collected debts for Rybolovlev, *id.* ¶ 12.7.4; and that Soriano "paid off a Russian sex worker who threatened to release an audio tape of her

relationship with Oleg Deripaska," *id.* ¶ 12.7.5.  The discovery Petitioners seek will also help Petitioners challenge Soriano's credibility should he be cross-examined at the ultimate trial in the English Defamation Action.  Soriano has offered blanket denials of the claims made in Forensic News' reporting.  *See id.* ¶¶ 22.1-22.7.  Any facts that damage Soriano's credibility and aid Petitioners' cross-examination will support Petitioners' efforts to prevail at trial in the English Defamation Action.  Petitioners have met the "for use" requirement, as three courts in the Southern and Eastern Districts have already held.  *See* Ex. 23 at 1 (holding that the requested discovery was "for use in a foreign proceeding before a foreign tribunal . . . pending in Great Britain"); *see also* Ex. 20 at 1; Ex. 25 at 1.

* * *

Petitioners indisputably satisfy the three statutory prerequisites to awarding Section 1782 relief.  Petitioners are defendants in a foreign case, and they seek discovery for use in a foreign proceeding from an entity found in this judicial district.  This Court should award Section 1782 relief.

## II.  The *Intel* Discretionary Factors All Favor Granting Petitioners' Application

The four discretionary factors identified in *Intel* also weigh strongly in favor of granting Petitioners' application, as Judges Matsumoto, Merkl, and Lehrburger concluded in addressing Petitioners' prior Section 1782 applications.  *See Mees*, 793 F.3d at 298; *see also* Ex. 20 at 1; Ex. 23 at 2; Ex. 25 at 1.  We again address each discretionary factor in turn.

*1. The Discovery Target Is Not A "Participant" In the Foreign Actions.*  The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding."  *Intel*, 542 U.S. at 244.  Here, HSBC USA is not a "party to the underlying proceedings in the High Court of England and Wales, and there is no expectation that [it] will become [a] part[y]."  *In re JSC BTA Bank*, 577 F. Supp. 3d at 267; *see* Doris Decl. ¶¶ 4–8, 24.

16

Moreover, because HSBC USA "resides in the United States and is not a party" to the English proceeding, the High Court would not even have jurisdiction to "obtain . . . any documents sought" from it. *In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *4 (E.D.N.Y. Dec. 6, 2018). This factor therefore weighs heavily in favor of granting Petitioners' application. *See id.*; *see also In re YS GM Marfin II LLC*, 2022 WL 624291, at *8 (S.D.N.Y. Mar. 2, 2022) (first discretionary factor favored applicants because respondents did not show "that the documents Applicants seek are within the jurisdictional reach of the English courts").[4]

    ***2. The English Court Is Receptive to U.S. Discovery Assistance.*** The second *Intel* factor assesses "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "Absent specific directions to the contrary from a foreign forum, [Section 1782]'s underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995); *see also In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *5 ("The Second Circuit has instructed district courts to be liberal in permitting requested discovery."). Courts in the Second Circuit therefore presume that a foreign forum will be receptive to U.S. assistance unless there is "*authoritative proof*" that the foreign forum "would reject evidence obtained with the aid of § 1782." *In re OOO Promneftstroy*, 134 F. Supp. 3d 789, 792 (S.D.N.Y. 2015) (emphasis added) (quoting *Euromepa S.A.*, 51 F.3d at 1100);

---

[4]    This factor would favor Petitioners even if Soriano himself had copies of his or USG's bank records that he could produce. "Although the foreign tribunal m[ight] have jurisdiction to compel the defendants to produce documents, those individuals may not have the same records—or quality of records—as [HSBC], . . . which almost certainly keep[s] account records." *In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *4 (S.D.N.Y. Aug. 13, 2019) (quoting *In re Furstenberg*, 2018 WL 3392882, at *6 (S.D.N.Y, July 12, 2018)) (granting Section 1782 application seeking discovery from HSBC USA and other banks).

*see also In re Gorsoan Ltd.*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) ("[T]here is no evidence that Cyprus has been 'expressly unreceptive' to U.S. discovery.").

The second *Intel* factor again favors Petitioners.  The High Court is amenable to accepting evidence procured through U.S. discovery mechanisms.  *See* Doris Decl. ¶¶ 31–33.  In fact, courts in this district have consistently found that "[t]he courts in the United Kingdom . . . are [] receptive to Section 1782 discovery." *In re Batbold*, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021); *see, e.g.*, *In re JSC BTA Bank*, 577 F. Supp. 3d at 267–68; *In re Application of Patokh Chodiev*, 2021 WL 3270042, at *2 (S.D.N.Y. July 30, 2021); *In re Vale S.A.*, 2020 WL 4048669, at *4 (S.D.N.Y. July 20, 2020); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).  And "the regularity with which U.S. courts grant similar Section 1782 discovery requests for [English] litigation . . . suggests that there is little potential offensiveness to such grants."  *In re Bloomfield Inv. Res. Corp.*, 2018 WL 6418421, at *6.

> **3.  *No Attempt to Circumvent Foreign Proof-Gathering Restrictions.***  The third *Intel* factor examines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  An applicant attempts to "circumvent" foreign proof-gathering restrictions only when it "uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence."  *Fed. Repub. of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022) (holding that a U.S.-Nigeria treaty did not qualify as such a measure).  Importantly, the third *Intel* factor is "not the same as a foreign discoverability requirement."  *In re Kreke Immobilien*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013).  "Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign

tribunal . . . or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding . . . ." *In re BNP Paribas Jersey Tr. Corp.*, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018).  Moreover, the requested discovery need not be admissible abroad.  *See Brandi-Dohrn*, 673 F.3d at 82.  Rather, when evaluating the third *Intel* factor, courts consider whether the petitioner seeks the discovery in good faith.  *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008).

Here, Petitioners make their discovery requests in a good faith effort to obtain information essential to one of their main defenses in the English Defamation Action: Petitioners' reporting about Soriano and USG was truthful and accurate.  Evidence substantiating that defense would help Petitioners defeat both the libel and GDPR claims pending against them. Doris Decl. ¶¶ 26–28, 30, 36.  The bank records Petitioners seek here could help prove the specific business relationships described by Petitioners and denied by Soriano, and could aid Petitioners in their cross-examination of Soriano by undermining Soriano's credibility.  The United Kingdom does not have any law or policy that would bar such relevant evidence.  *See id.* ¶¶ 34–37.  The third *Intel* factor strongly favors Section 1782 relief.

> **4.  *The Requested Discovery Is Relevant and Not Unduly Burdensome.***  The fourth *Intel* factor examines whether the request is "unduly intrusive or burdensome."  *Intel Corp.*, 542 U.S. at 265.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302.  That is, the Court should consider factors including "the parties' relative access to relevant information, the parties'

19

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b).[5]

Here, the discovery sought is unquestionably relevant to the English Defamation Action. It bears directly on the truth and accuracy of Petitioners' reporting—the most critical issue in the English Defamation Action—and on Soriano's credibility.  *See* Doris Decl. ¶¶ 26–30.  Again, the proposed subpoena seeks documents that reflect transactions involving Soriano and USG, the security consultancy firm whose business relationships Petitioners exposed in their articles (and Soriano now denies).  To the extent the documents reflect that HSBC USA cleared transactions or wire transfers between USG and any individual or entity described in Petitioners' articles, those documents would be critical evidence supporting denial of Soriano's Strike Out Application, refuting Soriano's claims on the merits at trial, and undermining Soriano's credibility.  The documents may also lead to additional, highly probative evidence regarding USG's business relationships during the period covered in Petitioners' articles.

Comparing the parties' relative access to the information also weighs in favor of granting the request, as the information sought is currently unavailable to Petitioners but within HSBC USA's control.  *See* Ex. 1 at 6 (instructing HSBC USA to provide only those documents in its "actual or constructive possession, custody, or control").  The documents Petitioners seek should be easily accessible to HSBC USA.  Indeed, the proposed subpoena seeks the type of evidence that HSBC USA regularly retrieves and produces as a third party.  *See, e.g.*, *In re Dreymoor Fertilizers Overseas Pte. Ltd.*, 2022 WL 2702617 at *1–2 (S.D.N.Y. July 12, 2022) (granting

---

[5]   That any ultimate English judgment will be unenforceable in the United States under the SPEECH Act does not render discovery inappropriate.  *Goenechea*, 2016 WL 560689, at *3 (granting Section 1782 application even though ultimate foreign judgment likely unenforceable pursuant to the SPEECH Act).  The SPEECH Act affects only judgments enforced in the United States.  Petitioners have a right to defend the English Defamation Action to prevent the imposition of a judgment that might be enforceable elsewhere.

request for "a supplemental order pursuant to 28 U.S.C. § 1782 authorizing [petitioner] to take additional discovery from H.S.B.C. Bank U.S.A., N.A."); *In re First Monolith Inc.*, 2021 WL 1093658, at *1–2 (S.D.N.Y. Feb. 1, 2021) (granting Section 1782 application for leave to serve HSBC USA with subpoena requesting wire transfer and payment information for listed entities and individuals).  Nor is there reason to believe that any documents Petitioners seek would be protected by attorney-client or work-product privilege.

Finally, the proposed subpoena is not unduly burdensome or intrusive.  The document requests are limited to the period from January 1, 2007 to the present—a discrete period that encompasses the key events and business relationships described in Petitioners' articles.  *See* Ex. 1 at 4.  The document requests also pertain to the banking activity of just one entity (USG) and one individual (Soriano).  *See id.* at 9; *In re Matter of Degens*, 2020 WL 4252725, at *5 (noting that HSBC is a "well-established, well-to-do-bank[]" and holding that "the burdens of the [requested] discovery" related to particular accounts "d[id] not outweigh the benefits"); *see also In re Doosan Heavy Indus. & Constr. Co.*, 2020 WL 1864903, at *2 (E.D.N.Y. Apr. 14, 2020) (holding that "the discovery sought [wa]s neither burdensome nor intrusive" because "it target[ed] only documents . . . clarifying the nature of the business relationship between" two entities).  In contrast, to deny Petitioners' motion would place an enormous burden on their shoulders.  Under English law, parties accused of defamation bear the burden of proving their innocence.  *See* Doris Decl. ¶ 27.  This is the opposite of American evidentiary presumptions— particularly in defamation cases, where *plaintiffs* in New York must not only prove the falsity of an allegedly defamatory statement but must do so by clear and convincing evidence.  N.Y. Civ. Rights. L. § 76-a(2).  To shoulder their burden under English law, Petitioners must prove the truth of their statements and debunk Soriano's blanket denials.  Doing so requires procuring

evidence from third-party sources like HSBC USA, just as Petitioners procured evidence from third-party sources Frankel, Azari, and Rossini.  *See* Exs. 20, 23, 25.

For these reasons, the fourth *Intel* factor also strongly weighs in Petitioners' favor.[6]

* * *

Each of the four discretionary *Intel* factors weighs strongly in favor of granting Petitioners' application.  HBSC is not a party to the English Defamation Action, English courts are receptive to U.S. discovery assistance, Petitioners do not seek to circumvent any English discovery restrictions, and the discovery sought is neither unduly burdensome nor intrusive. This Court should grant Petitioners' application in full.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant this Application in its entirety and grant Petitioners leave to serve on HSBC USA a subpoena substantially similar to that attached as Exhibit A to the Champion Declaration.

---

[6]  In any event, the Second Circuit has instructed that even if "a district court finds that a discovery request is overbroad, before denying [a Section 1782] application it should ordinarily consider whether that defect could be cured through a limited grant of discovery."  *Mees* 793 F.3d at 302; *see also Euromepa S.A.*, 51 F.3d at 1101 ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.").  Consequently, any doubts this Court has as to the scope of the discovery can be addressed in the context of a motion to compel or quash, rather than in this application seeking leave merely to serve Petitioners' proposed subpoena.

Dated: December 6, 2022

                                  Respectfully submitted,

                                    GIBSON, DUNN & CRUTCHER LLP

                                    */s/ Anne Champion*
                                    Anne Champion
                                    Lee R. Crain
                                    Erica Sollazzo Payne
                                    Catherine McCaffrey
                                    GIBSON, DUNN & CRUTCHER LLP
                                    200 Park Avenue, 47th Floor
                                    New York, NY 10166-0193
                                    Telephone: (212) 351-3883
                                    Facsimile:  (212) 351-5303

                                    *Attorneys for Petitioners*
                                    *Forensic News LLC and Scott Stedman*