# EXHIBIT C

N244

# Application notice

For help in completing this form please read
the notes for guidance form N244Notes.

Find out how HM Courts and Tribunals Service uses personal information you give them
when you fill in a form:
https://www.gov.uk/government/organisations/hm-courts-and- tribunals-service/about/personal-information- charter

| **Name of court** High Court of Justice, King's Bench Division, Media & Communications List | **Claim no.** QB-2020-002450 |
|---|---|
| **Fee account no.** (if applicable) | **Help with Fees – Ref. no.** (if applicable) |
| | H W F - ☐☐☐ - ☐☐☐ |
| **Warrant no.** (if applicable) | |
| **Claimant's name** (including ref.) WALTER TZVI SORIANO | |
| **Defendant's name** (including ref.) (1) FORENSIC NEWS LLC; (2) SCOTT STEDMAN; (3) ERIC LEVAI; | |
| **Date** | 19 January 2023 |

1. What is your name or, if you are a legal representative, the name of your firm?

Rechtschaffen Law

2. Are you a ☐ Claimant   ☐ Defendant   ☒ Legal Representative

☐ Other (please specify)

If you are a legal representative whom do you represent?  Claimant

3. What order are you asking the court to make and why?

1. An anti-suit injunction pursuant to s.37(1) of the Senior Courts Act 1981.
2. Costs on the indemnity basis.

because D1 and D2 are pursuing an application in the District Court of the Southern District of New York which, for the reasons summarised in the Sixth statement of Shlomo Rechtschaffen is vexatious, oppressive and unconscionable and which will interfere with the efficient conduct of the present proceedings in London.

© Crown copyright 2021

**N244** Application notice (01.21)

1

4.  Have you attached a draft of the order you are applying for? ☒Yes   ☐No

5.  How do you want to have this application dealt with? ☒at a hearing   ☐without a hearing

☐at a telephone hearing

6.  How long do you think the hearing will last? Is this time estimate agreed by all parties?

[ ] days   [2] hours

☐Yes   ☒No

8.  Give details of any fixed trial date or period

Hearing fixed for 2-3 March 2023.

9.  What level of Judge does your hearing need?

High Court Judge, M&C List

10. Who should be served with this application?

Claimant to serve Defendants

9a. Please give the service address, (other than details of the claimant or defendant) of any party named in question 9.

11. What information will you be relying on, in support of your application?

⊠ the attached witness statement

☐ the statement of case

☐ the evidence set out in the box below

If necessary, please continue on a separate sheet.

# Statement of Truth

I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

☐ **I believe** that the facts stated in section 10 (and any continuation sheets) are true.

☒ **The Applicant believes** that the facts stated in section 10 (and any continuation sheets) are true. **I am authorised** by the applicant to sign this statement.

**Signature**

☐ Applicant

☐ Litigation friend (where applicant is a child or a Protected Party)

☒ Applicant's legal representative (as defined by CPR 2.3(1))

**Date**

| Day | Month | Year |
|-----|-------|------|
| 19  | 01    | 2023 |

Full name

Shlomo Rechtschaffen

Name of applicant's legal representative's firm

Rechtschaffen Law

If signing on behalf of firm or company give position or office held

Director/Principal

Applicant's address to which documents should be sent.

Building and street

8a Green Walk

Second line of address

Town or city

London

County (optional)

Postcode

N W 4 2 A U

If applicable

Phone number

07932016551

Fax number

DX number

Your Ref.

Email

Shlomo@rlawoffices.co.uk

Claimant

Sixth Statement

Shlomo Hai Rechtschaffen

Exhibit "SHR6"

19 January 2023

**Claim No. QB-2020-002450**

**IN THE HIGH COURT OF JUSTICE**

**KING'S BENCH DIVISION**

**MEDIA AND COMMUNICATIONS LIST**


**B E T W E E N:**


**WALTER TZVI SORIANO**

Claimant

**- and -**


**(1) FORENSIC NEWS LLC**
**(2) SCOTT STEDMAN**
**(3) ERIC LEVAI**
**(4) JESS COLEMAN**
**(5) ROBERT DENAULT**

Defendants

---

**SIXTH WITNESS STATEMENT OF**
**SHLOMO HAI RECHTSCHAFFEN**

---


**I, SHLOMO RECHTSCHAFFEN** of 8a Green Walk, London NW4 2 AJ say as follows:

1. I am the Claimant's solicitor. I am the same Shlomo Rechtschaffen who gave the five previous witness statements in relation to this matter.

1

2. I make this witness statement in support of the Claimant's application for an anti-suit injunction to restrain the pursuit by the First and Second Defendants in the US Courts of an application under 28 USC §1782 (the "**1782 Application**") which seeks to obtain confidential banking information, ostensibly in support of the present proceedings.

3. The content of this evidence is based on my own knowledge or on sources which I identify.  Exhibit SHR6 contains true copies of relevant documents, the pages of which I refer to below as **[SHR6/xxx]**.

4. I do not set out in this statement the background to the present proceedings since this appears from the judgments and my earlier statements.   The key facts for present purposes can be shortly summarised:

    a. the First and Second Defendants have by their 1782 Application sought from the US District Court of the Southern District of New York an order requiring extremely wide-ranging production of documents by HSBC Bank USA N.A (copy of the proposed subpoena is at [**SHR6/1-9**]);

    b. the documents sought from HSBC Bank USA are <u>all documents</u> relating to either USG Security (of which the Claimant is the CEO) or the Claimant personally, such documents to include, but not be limited to, "*any and all account information, information relating to any financial transactions, Wire Transfers and/or CHIPS or SWIFT payment messages regarding any Wire Transfer*";

    c. HSBC Bank USA is, as its name indicates, a US entity of the HSBC group, with whom through a separate UK entity the Claimant and his company USG Security Ltd hold their accounts in the UK;

    d. no attempt was made by the First and Second Defendants to notify the Claimant of the 1782 Application (who only found out from online sources);

    e. nor was any attempt made to seek directions or permission from the English Court before launching the 1782 Application in the SDNY Court;

    f. the First and Second Defendants are using the same firm, Gibson Dunn & Crutcher, in the US as in the UK and have produced declarations from two

partners of the firm: Anne Champion (from the New York office) and Patrick Doris (from the London office): see **[SHR6/10-25]** (without exhibits);

g.  Mr Doris has asserted that the evidence sought is "expected to be highly relevant" to his clients' ability to respond to the Strike-Out application and ultimately to defend the substantive claims;

h.  he has also deposed that he is not aware of anything which might cause the English Court to think that there is anything "unconscionable" about his clients' use of the 1782 procedure in the US;

i.  meanwhile, a costs award of £85,000 + VAT payable by the First and Second Defendants to the Claimant by 12 January 2022  remains unpaid.

5.  I note by way of background that in addition to seeking the production of documents from HSBC Bank USA, the First and Second Defendants have also used the 1782 procedure to issue subpoenas for the deposition of witnesses whose evidence the First and Second Defendants consider may be of relevance.  However, the focus of the present injunction application is not on these other evidence-gathering steps but rather upon the 1782 Application against HSBC Bank USA.

**Objections to 1782 Application**

6.  As was emphasised in a letter from my firm to HSBC of 16 January 2023 **[SHR6/26-30]**, the First and Second Defendants seek to obtain banking information which is confidential as between the bank and its customer.  Whilst I accept that the Courts (in both England and New York) have the power to order the production of such documents in spite of such confidentiality, there needs to be a proper justification for doing so.

7.  An attempt to justify the disclosure of confidential information would ordinarily be put forward as against the customer of the bank who would then have the opportunity to produce documents voluntarily or to seek to persuade the Court why no order should be made.  One of the more remarkable aspects of the First and Second Defendants' application is that they have proceeded immediately and directly against the bank or, more accurately, a US entity within the same banking group.  No attempt was made to notify the Claimant or the company, USG Security Ltd, of which he is CEO that the

First and Second Defendants wished to obtain the banking documents now sought.  I can only infer that this was tactical and designed to apply pressure to the Claimant.

8.  Another remarkable aspect of the application is that this banking information is irrelevant to the issues which will be before the Court at the 2-3 March 2023 hearing. At this hearing, the Claimant seeks a determination of the natural and ordinary meaning of the words and to strike out certain parts of the Defence, based on the pleadings alone. The Court will not be addressing the substance of any defence and certainly not the credibility of Mr Soriano as a witness.  The proper scope of documentary disclosure would be addressed only later at a Case Management Conference.  The First and Second Defendant's attempts to obtain evidence in the US are therefore seriously premature and for that reason alone liable to interfere with the efficient conduct of the English proceedings.  Insofar as Mr Doris has given the impression that his clients need the banking information for the strike-out hearing (see, e.g. para 26 of his declaration **[SHR/22]**) I regret to say that I regard that as having been seriously misleading.

9.  Even once the disclosure stage in the English proceedings was reached, it is to my mind inconceivable that an Order would ever be made as against the Claimant, his company or his bank in such broad and unfocussed terms as the order now sought in the SDNY against HSBC Bank USA.  The breadth of the request would suggest to me that the First and Second Defendants are on a fishing expedition.  Insofar as Mr Doris asserts that disclosure of banking information is needed in order to challenge the Claimant's credibility, my understanding is that this is not generally a sufficient justification for disclosure.  The sheer breadth of the disclosure sought is therefore by its very nature oppressive.  Indeed, what the First and Second Defendants appear to be seeking to do is to circumvent the oversight and control which the English Court would exercise (with particular care in the context of confidential banking information).

10. Although Mr Doris has given evidence to the SDNY Court that the rationale for proceeding against HSBC Bank USA is that its documents will be outside the territorial scope of an order which the English Court could make, this too is not a fair presentation of the facts.  I am told by the Claimant that neither he nor USG Security Limited has any bank account with HSBC Bank USA. Insofar as banking records are held in the US it will only be because dollar payments will have cleared through the US entity of the HSBC group as part of the group's ordinary banking operations.   The justification for

seeking to gather evidence in the US is therefore spurious given that the evidence of payments made or received by the Claimant or USG Security Limited will be available in London where the accounts themselves are held.

11. A further objection to the First and Second Defendants initiating legal proceedings in the US which are ancillary to the English action is that it places the Claimant in the invidious position of having to choose whether to raise his objections in London or New York (or both) in respect of their conduct. Whereas the First and Second Defendants are able to use the same firm on both sides of the Atlantic, the Claimant is compelled to engage separate firms.

12. The need for the Claimant to incur costs on a "transatlantic" litigation strategy is all the more objectionable whilst the costs award in his favour of £102,000 (excluding statutory interest) remains outstanding. Indeed, if the First and Second Defendants had tried in London to apply for disclosure as against the Claimant personally or any non-party, the immediate response to such an application would have been for the Claimant to seek a debarring order to prevent the application from being heard unless the outstanding costs were paid. However, the First and Second Defendants have been able to proceed in the US without any such obstacle. On this basis alone, I would respectfully suggest that the First and Second Defendants' conduct is abusive and oppressive. They have sought to open up a new front in the US Courts whilst the costs of their failed jurisdiction challenge in the UK remain unpaid. I respectfully suggest that this alone would justify the description of "unconscionable" and restraint by way of injunction. The First and Second Defendants are otherwise getting a free ride.

**Conclusion**

13. I have sought to summarise in very short terms the reasons why the Claimant considers that the First and Second Defendants are acting unconscionably and oppressively in seeking to obtain confidential banking information via the 1782 procedure. These points will obviously be expanded upon, including by reference to the jurisprudence, at the hearing of the application.

**Statement of Truth**

I believe that the facts stated in this witness statement are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed:

Name: Shlomo Rechtschaffen

Dated this 19 day of January 2023

**Claim No. QB-2020-002450**

**IN THE HIGH COURT OF JUSTICE**

**KING'S BENCH DIVISION**

**MEDIA AND COMMUNICATIONS LIST**


**B E T W E E N:**


**WALTER TZVI SORIANO**

Claimant

**- and -**


**(1) FORENSIC NEWS LLC**
**(2) SCOTT STEDMAN**
**(3) ERIC LEVAI**
**(4) JESS COLEMAN**
**(5) ROBERT DENAULT**

Defendants

_____

**EXHIBIT SHR6**

_____

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

_____ District of _____

| | |
|---|---|
| _____ | ) |
| Plaintiff | ) |
| v. | )     Civil Action No. |
| | ) |
| _____ | ) |
| Defendant | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: _____

*(Name of person to whom this subpoena is directed)*

❏ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: | Date and Time: |
|---|---|
| | |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

1

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**DEFINITIONS**

The following definitions apply to the requests below and should be considered as part of each such production topic:

1.      The terms "You," "Your," and "Yours" mean the subpoenaed party—HSBC Bank USA, N.A.—and any current and former representatives, agents, and any other person acting, or purporting to act, on the subpoenaed party's behalf.

2.      The term "USG" means USG Security Limited (*a/k/a* USG Security Group, *f/k/a* Universe Security Group Limited) and any subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents, and any other person acting, or purporting to act, on its behalf, and any predecessors or successors of the foregoing, including Universe Security Group Limited.

3.      The term "Walter Soriano" means the Claimant in the civil action *Walter Tzvi Soriano v. Forensic News LLC, et al*., Claim No. QB-2020-002450, currently pending in the High Court of Justice, King's Bench Division.

4.      "CHIPS" means the Clearing House Interbank Payments System.

5.      "SWIFT" means Society for Worldwide Interbank Financial Telecommunications.

6.      "Wire Transfer" means any wire, electronic transfer of funds or other meaning set forth in Article 4A of New York's Uniform Commercial Code.

7.      The term "relevant period" means January 1, 2007 to Present, except where otherwise noted.

8.     For all terms not herein defined, the definitions set forth in Local Civil Rule 26.3 of the Local Rules for the United States District Court for the Southern District of New York apply.

## <u>INSTRUCTIONS</u>

The following instructions shall govern the response and production of documents:

1.       In response to these requests, You are required to produce all responsive documents in Your actual or constructive possession, custody, or control, including documents in the possession of, or available or accessible to, You or any of Your agents or attorneys.

2.       At the time and place of production of the documents requested herein, the documents requested are to be produced in the same order as maintained in the ordinary course of business and in accordance with Rule 45 of the Federal Rules of Civil Procedure.

3.       If You object to a portion or an aspect of a Document Request, You are required to state the grounds for Your objection with specificity within 7 days of these Document Requests and to respond as to any portion(s) of the Document Request concerning which You have not propounded such objection.  Any objections must be stated with specificity, pursuant to Federal Rule of Civil Procedure 34(b)(2).

4.       If it is Your position that a Document or Communication responsive to a Request below exists but is in the possession, custody, or control of another person or entity (including Walter Soriano and USG), identify the Document or Communication and the entity which You believe exercises possession, custody, or control over that Document or Communication.

5.       For each document produced, identify the specific Document Request category or categories to which it is responsive.

6.       In the event that any document called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that document is to be identified as completely as possible, including, without limitation, the following information:  author(s); addressee(s); indicated or blind-copy recipient(s); date, subject matter; date of disposal; reason

6

for disposal or why it is no longer in existence; method of disposal; person(s) authorizing the disposal; and the person(s) disposing of the document; and last known location.

7.      If, with respect to any Document Request, there are no responsive documents, so state in writing.

8.      Unless a Request calls for the production of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, doctrine, or right of privacy, each request for documents seeks production of the document in its entirety, without abbreviation, redaction, expurgation, or modification, including all attachments, enclosures, or other matters affixed thereto.  Documents attached to each other, including, but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated. The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the documents.  If a document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.  In the event that multiple copies or versions of a document exist, produce all non-identical copies of the document, including any and all drafts of the document.

9.      Where a claim of privilege is asserted in objecting to any Document Request or subpart thereof, and any document is withheld on the basis of such assertion, You shall submit in lieu of each such document a privilege log in accordance with Federal Rule of civil Procedure 26 and Local Civil Rule 26.2 that:

          a.   Identifies the nature of the privilege (including work product) that is being claimed;

b.  Describes the nature and general topic of the document in a manner consistent with the privilege, work product, or other asserted ground for non-production;

c.  Identifies the person or persons who prepared the document and (if applicable) the person or persons to whom the document was sent;

d.  Identifies each other person who has seen or had possession of the document;

e.  Specifies the date on which the document was prepared, transmitted, or received; and

f.  Provides such other information as is sufficient to identify the document in a manner that will enable Petitioners and the court to assess the applicability of the privilege claimed.

10.  Defined terms may be capitalized for convenience; the definitions herein apply whether or not the term is capitalized.

11.  Except where expressly stated, these Document Requests are not limited in any way by geography.

## **DOCUMENTS TO BE PRODUCED**

1. All documents and communications relating to USG, including but not limited to any and all account information, information relating to any financial transactions, Wire Transfers, and/or CHIPs or SWIFT payment messages regarding any Wire Transfer.

2. All documents and communications relating to Walter Soriano including but not limited to any and all account information, information relating to any financial transactions, Wire Transfers, and/or CHIPs or SWIFT payment messages regarding any Wire Transfer.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of FORENSIC NEWS LLC and SCOTT STEDMAN for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22-mc-347 |

**DECLARATION OF ANNE CHAMPION IN SUPPORT OF PETITIONERS'**
**APPLICATION FOR JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE**
**FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

I, Anne Champion, hereby declare under penalty of perjury, pursuant to 28 U.S.C.
§ 1746, that the following is true and correct:

1.      I am a partner in the law firm of Gibson, Dunn & Crutcher LLP, and am admitted
to practice law in the State of New York and the United States District Court for the Southern
District of New York.  My firm represents Forensic News LLC and Scott Stedman (the
"Petitioners").  I make this declaration in support of Petitioners' application for Judicial
Assistance to Obtain Evidence for use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (the
"Application").  I am over the age of eighteen years and am not a party to this action.

2.      I have learned information demonstrating that HSBC Bank USA, N.A., has within
its possession, custody, or control records of transactions initiated by Mr. Walter Soriano, by and
through his business USG Security Limited.  This information was provided to me by a source
with firsthand knowledge of the existence of these transaction records, some of which I have
reviewed on a confidential basis.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of a proposed subpoena
for HSC Bank USA N.A.

<span style="color:red">10</span>

4. Attached hereto as **Exhibit 2** is a true and correct copy of a webpage entitled "About Us Forensic News Modern Investigative Journalism" published on the website for Forensic News LLC, available at https://forensicnews.net/about/.

5. Attached as **Exhibit 3** is a true and correct copy of a webpage entitled "Scott Stedman About The Author" found on the website for Simon & Schuster, available at https://www.simonandschuster.com/authors/Scott-Stedman/158412147.

6. Attached as **Exhibit 4** is a true and correct copy of the First Appendix to the Particulars of Claim filed in the High Court of Justice, King's Bench Division, on August 16, 2020 in *Walter Tzvi Soriano v. Forensic News LLC, et al.* (Claim No. QB-2020-002450).

7. Attached as **Exhibit 5** is a true and correct copy of an article by Natasha Bertrand, entitled "Senate Intelligence Committee summons mysterious British security consultant," published by Politico on June 5, 2019, available at https://www.politico.com/story/2019/06/05/senate-intelligence-committee-british-security-consultant-1353675.

8. Attached as **Exhibit 6** is a true and correct copy of an article published by Seth Hettena, entitled "Walter Soriano: The Security Consultant for Russian Oligarchs, the CIA . . . and Diego Maradona?" dated June 7, 2019, available at https://sethhettena.com/2019/06/07/walter-soriano-the-security-consultant-for-russian-oligarchs-and-diego-maradona/.

9. Attached as **Exhibit 7** is a true and correct copy of a press release published by the U.S. Department of the Treasury, entitled "Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity," dated April 6, 2018, available at https://home.treasury.gov/news/press-releases/sm0338.

10.     Attached as **Exhibit 8** is a true and correct copy of an excerpt from Volume 5 of the Senate Committee on Intelligence's Report on "Russian Active Measures Campaigns and Interference in the 2016 U.S. Election," dated August 18, 2020, available at https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf.

11.     Attached as **Exhibit 9** is a true and correct copy of the Particulars of Claim filed in the High Court of Justice, King's Bench Division, on August 16, 2020 in *Walter Tzvi Soriano v. Forensic News LLC, et al.* (Claim No. QB-2020-002450).

12.     Attached as **Exhibit 10** is a true and correct copy of an article by Nicole Hong, Barry Meier, and Ronen Bergman, entitled "Environmentalists Targeted Exxon Mobil. Then Hackers Targeted Them." published by the New York Times on June 9, 2020, available at https://www.nytimes.com/2020/06/09/nyregion/exxon-mobil-hackers-greenpeace.html.

13.     Attached as **Exhibit 11** is a true and correct copy of an excerpt of the transcript of the deposition of Aviram Azari, dated November 2, 2022.

14.     Attached as **Exhibit 12** is a true and correct copy of an English translation of a Reiterative Deed, executed July 10, 2014 and excerpted from a longer Deed of companies that was registered December 26, 2014 in the Trade and Companies Register of the Commercial Court of Chambery, along with a certification of translation and a copy of the original document in French.

15.     Attached as **Exhibit 13** is a true and correct copy of an article published by the Times of Israel, entitled "Report: US Senate asks to interview Israeli-Brit in connection with Russia probe," dated June 6, 2019, available at https://www.timesofisrael.com/report-us-senate-asks-to-interview-israeli-brit-in-connection-with-russia-probe.

3

16.     Attached as **Exhibit 14** is a true and correct copy of the Judgment of the High Court of Justice, King's Bench Division, in *Walter Tzvi Soriano v. Forensic News LLC, et al.* (Claim No. QB-2020-002450) filed January 15, 2021.

17.     Attached as **Exhibit 15** is a true and correct copy of the Judgment of the Court of Appeal (Civil Division) in *Walter Tzvi Soriano v. Forensic News LLC, et al.* (Claim No. CA 2021-000484) filed December 21, 2021.

18.     Attached as **Exhibit 16** is a true and correct copy of an article entitled "Landmark GDPR appeal allowed in Soriano v Forensic News LLC & ors," published by 5RB on December 21, 2021, available at https://www.5rb.com/news/landmark-gdpr-appeal-allowed-in-soriano-v-forensic-news-llc-ors.

19.     Attached as **Exhibit 17** is a true and correct copy of an article by Sam Tobin, entitled "Landmark jurisdiction ruling on data protection and libel claims," published by the Law Society Gazette on December 22, 2021, available at https://www.lawgazette.co.uk/news/landmark-jurisdiction-ruling-on-data-protection-and-libel-claims/5111012.article.

20.     Attached as **Exhibit 18** is a true and correct copy of an order issued by the High Court of Justice, King's Bench Division in *Walter Tzvi Soriano v. Forensic News LLC, et al.* (Claim No. CA 2021-000484), filed June 21, 2022, ordering trial on the following two applications: Soriano's motion to determine the natural and ordinary meanings of the publications and whether they are defamatory (the "Meaning Determination Application") and Soriano's motion to strike certain of Petitioners' defenses, including that the allegations made in the publications are true (the "Strike Out Application").

4

21.     Attached as **Exhibit 19** is a true and correct copy of Petitioners' "Memorandum of Law in Support of Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782," filed in *In re Application of Forensic News LLC, et al.*, No. 1:22-mc-00993, ECF No. 2 (E.D.N.Y. Apr. 4, 2022) (Matsumoto, *J.*).

22.     Attached as **Exhibit 20** is a true and correct copy of Judge Matsumoto's order granting Petitioners' application for an order pursuant to 28 U.S.C. § 1782 in *In re Application of Forensic News LLC, et al.*, No. 1:22-mc-00993, ECF No. 11 (E.D.N.Y. Apr. 4, 2022) (Matsumoto, *J.*).

23.     Attached as **Exhibit 21** is a true and correct copy of an excerpt of the transcript of the deposition of Richard Frankel, dated May 24, 2022.

24.     Attached as **Exhibit 22** is a true and correct copy of Petitioners' "Memorandum of Law in Support of Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782," filed in *In re Application of Forensic News LLC, et al.*, 1:22-mc-00229, ECF No. 4 (S.D.N.Y. Aug. 23, 2022) (Carter, *J.*).

25.     Attached as **Exhibit 23** is a true and correct copy of Magistrate Judge Lehrburger's order granting Petitioners' application for an order pursuant to 28 U.S.C. § 1782 in *In re Application of Forensic News LLC, et al.*, No. 1:22-mc-00229, ECF No. 16 (S.D.N.Y. Oct. 19, 2022) (Lehrburger, *M.J.*).

26.     Attached as **Exhibit 24** is a true and correct copy of Petitioners' "Memorandum of Law in Support of Petitioners' Application for an Order Pursuant to 28 U.S.C. § 1782," filed in *In re Application of Forensic News LLC, et al.*, 1:22-mc-01617, ECF No. 2 (E.D.N.Y. July 25, 2022) (Brodie, *C.J.*).

14

27.     Attached as **Exhibit 25** is a true and correct copy of Magistrate Judge Merkl's order granting Petitioners' application for an order pursuant to 28 U.S.C. § 1782 in *In re Application of Forensic News LLC, et al.*, No. 1:22-mc-01617, ECF No. 13 (E.D.N.Y. Aug. 16, 2022) (Merkl, *M.J.*).

28.     Attached as **Exhibit 26** is a true and correct copy of an excerpt from HSBC USA's 2021 Form 10-K, filed with the Securities and Exchange Commission on February 22, 2022, available at https://www.about.us.hsbc.com/investor-relations/hsbc-usa.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 6, 2022
New York, New York

    _/s/ Anne Champion_____
    Anne Champion

6

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re Application of FORENSIC NEWS LLC
and SCOTT STEDMAN for an Order Pursuant
to 28 U.S.C. § 1782 to Conduct Discovery for
Use in a Foreign Proceeding.

Case No.   22-mc-347

---

**DECLARATION OF PATRICK DORIS IN SUPPORT OF PETITIONERS'**
**APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

I, Patrick Doris, pursuant to 28 U.S.C. § 1746, declare as follows:

**INTRODUCTION**

1.       I was admitted as a solicitor in England and Wales in 1999 and am currently a
Partner at the law firm Gibson, Dunn & Crutcher UK LLP, based in London, England, in the
United Kingdom.  I practice in the fields of commercial litigation, public and administrative
law, corporate investigations and compliance, including in relation to data privacy compliance.
I act as counsel to Petitioners, who are defendants in proceedings (the "English Defamation
Action") currently underway in the High Court of Justice, King's Bench Division (the "High
Court").

2.       I submit this Declaration in support of Petitioners' Application for an Order
Pursuant to 28 U.S.C. § 1782 (the "Application") permitting them to issue a subpoena for the
production of documents from HSBC Bank USA, N.A. ("HSBC USA").

3.       Unless otherwise stated, all facts set forth in this Declaration are based upon my
personal knowledge, information supplied to me by Petitioners, and my review of relevant
documents, including the proposed subpoena.  If called as a witness, I could and would testify
competently regarding the information set forth herein.

1

16

## THE ENGLISH DEFAMATION ACTION

4.      The first defendant in the English Defamation Action, Forensic News LLC ("Forensic News"), is a California limited liability company and independent news outlet. Forensic News owns a news website that publishes investigative reporting pieces in the public interest.  Forensic News' mission, as explained on its website, is to: "*deliver original long-form investigative journalism that actually matters. Though focused on national security/political/legal matters, we will never turn a blind eye to reporting that could make an impact*."

5.      Forensic News' journalists are primarily American.  Although Forensic News has a small number of subscribers in the United Kingdom, Forensic News' journalists report in America for a largely American audience and from an American perspective.

6.      Forensic News has, to date, published at least 160 articles, all of which are available on its website.  The articles cover a variety of topics, including investigations into businesses related to Donald Trump, cybersecurity and spyware, the use of Russian money in the U.S. political and financial systems, and the activities of private intelligence companies in U.S. elections and major business disputes.

7.      The second and third defendants and the former fourth and fifth defendants in the English Defamation Action are or were journalists who have published articles and/or podcasts on Forensic News' website.  (The former sixth defendant, Richard Silverstein, is a journalist not affiliated with Forensic News; references to "the defendants" below do not extend to Mr. Silverstein.)  They are all U.S. citizens and reside in the United States.

8.      On 14 July 2020, Mr. Walter Soriano initiated the English Defamation Action in relation to eight publications authored or produced by the defendants: six journalistic reports, one podcast, and a published transcript of that podcast.  These are the only publications on Forensic News' website that make substantial reference to Mr. Soriano.  The claims brought

by Mr. Soriano included: (i) breach of the UK General Data Protection Regulation (GDPR), (ii) malicious falsehood, (iii) libel, (iv) harassment, and (v) misuse of private information.

9.    Because the defendants reside outside the United Kingdom, Mr. Soriano made an application for permission to serve the proceedings out of the jurisdiction. Mr. Soriano originally brought that application on an *ex parte* basis, but by order of the High Court later brought it on notice to the defendants so that they could have an opportunity to oppose it at the outset (rather than applying retroactively for permission to be set aside once served).

10.    All of the defendants, represented by my firm and by specialist defamation law barrister, Jonathan Price of Doughty Street Chambers, opposed Mr. Soriano's application on the basis that the High Court lacked the necessary jurisdiction to try the claims.

11.    A hearing was held before the Honourable Mr. Justice Jay on 14 and 15 December 2020 to decide the issue of jurisdiction. In a judgment dated 15 January 2021, Mr. Justice Jay granted permission for Mr. Soriano to serve outside of the jurisdiction with respect to the libel claim and part of the privacy claim (only in relation to four photographs of Mr. Soriano that were published on Forensic News' website). The remaining claims fell away.

12.    The defendants appealed, and Mr. Soriano cross-appealed on the GDPR and malicious falsehood claims. In a decision dated 21 December 2021, the Court of Appeal dismissed the defendants' appeal and granted Mr. Soriano's cross-appeal with respect to the GDPR claim. In other words, the Court of Appeal granted Mr. Soriano permission to serve the defendants in the United States with his claims for (i) libel, (ii) misuse of private information with respect to the four photographs, and (iii) violation of the GDPR. The defendants declined to pursue a further appeal.

13.    On or around 10 and 11 January 2022, Mr. Soriano served four of the defendants (including Petitioners) with a Re-Amended Claim Form and Particulars of Claim. Mr. Soriano purported to serve the former fifth defendant on or around 11 January 2022 with the same

documents, but the former fifth defendant challenged the jurisdiction of the court and argued that service was defective under the laws of Pennsylvania where Mr. Soriano attempted service.

14.     On 23 February 2022, the former fifth defendant voluntarily withdrew his application to challenge jurisdiction of the High Court for improper service, and Mr. Soriano agreed to an extension of time for all of the defendants to file their Defence.  It was at this point, when all of the defendants had been properly served, that the merits proceedings before the High Court formally commenced.

15.     The defendants filed their Defence on 16 March 2022.  Among other defences, the defendants asserted a "truth" defence arguing that the challenged statements were not false or inaccurate.

16.     In June 2022, Mr. Soriano entered into a settlement agreement with the former fourth and fifth defendants.  He is no longer pursuing his claims against those two defendants, although his claims remain pending against the others, including Petitioners.

17.     Also in June 2022, Mr. Soriano applied to the High Court for (i) a preliminary determination of the "natural and ordinary meaning(s)" borne by Petitioners' publications and whether the meanings found are defamatory at common law (a "Meaning Determination"); and (ii) an order striking out certain paragraphs of defendants' Defence as unsupported, including their truth defence (the "Strike-Out Application").  The remaining defendants consented to the holding of a "preliminary issue" trial to resolve both of these issues.  On 21 June 2022, the High Court listed both issues for a directions hearing.  On 28 October 2022, upon the consent of the parties, the High Court issued an order vacating the directions hearing.  The effect of that order is that the High Court will hold a two-day preliminary issue trial, which the Court subsequently scheduled for 2 and 3 March 2023.  The High Court will make a Meaning Determination and resolve Mr. Soriano's Strike-Out Application based on evidence presented by the parties at the preliminary issue trial.

18.     After the High Court has made a Meaning Determination and resolved Mr. Soriano's Strike-Out Application, the High Court is expected to convene a case management conference to determine the timetable to the trial on the merits of the English Defamation Action.  This will include the parties entering into the disclosure phase of the English Defamation Action (akin to "discovery" in U.S. civil proceedings).  After the disclosure phase, the parties will prepare and file witness statements, the content of which may be informed by the evidence obtained and exchanged during the disclosure process.  The parties will thereafter begin preparation for trial on the merits, including cross-examination of witnesses and skeleton arguments.

## PROCEDURAL AND EVIDENTIARY RULES IN ENGLAND AND WALES

19.      The rules of civil procedure applicable to the English Defamation Action require that all facts at issue in a case must be proved by evidence, except where presumptions apply, facts are formally admitted, or the facts qualify for judicial notice (*i.e.*, the facts are so well-established that they are accepted without admission or the need for evidence).  To the extent evidence is not currently under Petitioners' control, Petitioners will have to use available disclosure mechanisms to procure evidence in support of their case.

20.     The High Court controls documentary evidence in proceedings by making orders for disclosure.

21.     Here, the High Court can be expected to order the parties to engage in "*standard disclosure*."  Standard disclosure is the exercise of the parties' duty to disclose the documents on which they rely and any documents that adversely affect or support their or any other party's case.  Standard disclosure includes documents that are or were in a party's control and requires that a party make a reasonable search for these documents.  The duty is ongoing and continues until the proceedings are concluded.

22.     Parties will generally be entitled to seek disclosure or to adduce any other evidence so long as it is relevant.  Evidence is relevant if it is directed to any fact that a party must prove to succeed in their case and that is not admitted by the adverse party.  In *Director of Public Prosecutions v Kilbourne* [1973] AC 729 at 756, Lord Simon defined "*relevant*" evidence as that which is "*logically probative or disprobative of some matter which requires proof*" and *"makes the matter which requires proof more or less probable*."  To be relevant, evidence does not have to conclusively prove or disprove a fact at issue: it need only assist in proving or disproving, or tend to prove or disprove, a fact at issue.

23.     In deciding whether to admit evidence at trial, the High Court will further follow the guidance in *Great Future International Ltd and others v Sealand Housing Corporation and others* [2002] EWCA Civ 1183.  First, it will decide whether the evidence is relevant and not subject to an exclusionary rule of evidence.[1]  Second, it will determine whether there is any good reason to exclude the otherwise admissible evidence as a matter of discretion under the English Civil Procedural Rules (rule 32.1).  There is no express limit on the Court's discretion to exclude evidence, but "*it has to be exercised in support of, and subject to, the overriding objective of enabling the Court to deal with cases justly*" (*Grobbelaar v News Group Newspaper Limited*, CA, 9 July 1999).

24.     Although the High Court can order disclosure from entities and individuals in England and Wales, it cannot directly compel disclosure from entities or individuals outside its jurisdiction of documents which are outside its jurisdiction.  I understand that the entity from which Petitioners seek discovery, HSBC USA, is headquartered at 452 Fifth Avenue, New York, New York 10018.  I also understand that HSBC USA transacts business in New York, New York, including as a correspondent bank that clears international U.S.-dollar denominated

---

[1]   Examples of exclusionary rules include those which render inadmissible: opinion evidence (unless it is expert opinion evidence per Section 3 of the Civil Evidence Act 1972); privileged evidence; and evidence to which Public Interest Immunity applies.

wire transfers between banks. Because HSBC USA is located in the United States, the documents in HSBC USA's possession are highly likely to be in the USA and not in England and Wales. Moreover, HSBC USA is neither currently nor expected to be a party to the English Defamation Action. For these reasons, the High Court will not have the jurisdiction or direct ability to compel production of documentary evidence under its control.

25.     At trial, Petitioners may have an opportunity to cross-examine any witnesses who testify in support of Mr. Soriano's case—including Mr. Soriano himself. Petitioners may confront a witness with documentary evidence during cross-examination to challenge that witness's credibility.

## THE EVIDENCE SOUGHT IS EXPECTED TO BE RELEVANT TO THE HIGH COURT'S DETERMINATION OF THE CLAIMS

26.     Petitioners are requesting discovery in New York that will enable them to defend against Mr. Soriano's claims in the English Defamation Action. Petitioners seek evidence related to specific statements made in their reporting and challenged by Mr. Soriano, including statements about work performed by Mr. Soriano and his security firm USG Security Limited. The evidence sought from HSBC USA is expected to be highly relevant to Petitioners' ability to respond to Mr. Soriano's Strike-Out Application, in the near term, and ultimately to defend against Mr. Soriano's libel and GDPR claims.

27.     *First*, with respect to the libel claim, Mr. Soriano alleges that 33 statements contained in the publications are defamatory. In England and Wales, it is an absolute defence to a defamation claim to show that a defamatory statement is true.[2] The rationale for this defence is that a claimant should not be entitled to recover damages for injury to a reputation

---

[2]   *See* Section 2 of the English Defamation Act 2013. Section 2(1) provides that "*it is a defence to an action for defamation for the defendant to show that the imputation conveyed by the statement complained of is substantially true.*"

he did not deserve in the first place. In English defamation proceedings, a party asserting a defence of truth bears the burden of proof as to the truth of the statement.

28. *Second*, the evidence is expected to be relevant to Petitioners' defence of the GDPR claim. Mr. Soriano alleges that certain statements contained in Forensic News' publications breach the GDPR provision requiring accuracy. Article 5(1)(d) of the UK GDPR states that: "*Personal data shall be: . . . (d) accurate and, where necessary, kept up to date; every reasonable step must be taken to ensure that personal data that are inaccurate, having regard to the purposes for which they are processed, are erased or rectified without delay ('accuracy').*" Although the UK GDPR does not define the word "*accurate,*" its implementing legislation, the Data Protection Act 2018, states that "*inaccurate*" means "*incorrect or misleading as to any matter of fact.*"

29. *Third*, the evidence will relate directly to Mr. Soriano's credibility. In both court filings and statements to Petitioners, Mr. Soriano has flatly denied the truth of various statements made in Petitioners' reporting, and he implicitly denies the truth of others (those he sues on in defamation but which he has not sought explicitly to establish are inaccurate as part of his GDPR claim). Petitioners believe Mr. Soriano is likely to testify at the ultimate trial on the merits in the English Defamation Action and if he does so, he will deny the truth of Petitioners' statements. The evidence that Petitioners seek from HSBC USA will allow them to undermine Mr. Soriano's denials and to challenge Mr. Soriano's credibility as a witness during trial and cross-examination.

30. Petitioners and I believe that HSBC USA may possess documents and records corroborating the truth and/or accuracy of the publications at issue—particularly those that describe Mr. Soriano's security firm, USG, and his business dealings with certain Russian oligarchs, Israeli political figures, and individuals and entities involved in hacking and cybersurveillance activities. Petitioners and I further believe that documents in the possession

of HSBC USA may permit Petitioners to challenge Mr. Soriano's credibility during trial, particularly to the extent he denies having transacted with certain individuals or entities.

## THE HIGH COURT WILL LIKELY CONSIDER EVIDENCE OBTAINED PURSUANT TO SECTION 1782

31.    As described above, Petitioners will be permitted to submit evidence in the English Defamation Action.

32.    The High Court is amenable to accepting evidence procured through U.S. discovery mechanisms, including Section 1782.

33.    To my knowledge, there are no laws or policies that would prevent the High Court from admitting and giving due weight to evidence obtained through Section 1782, and a request for discovery would not circumvent any English proof-gathering restrictions under the circumstances of this case.  In *South Carolina Insurance Co. v Assurantie Maatschappij de Zeven Provincien N.V. [1987] AC 24*, the Judicial Committee of the House of Lords (then the highest appellate court in England) considered the issue directly, and held that a party to an English proceeding can make use of the Section 1782 discovery mechanism to obtain evidence for use in the English courts, and that it would be otherwise only if recourse to such mechanism was under the circumstances an abuse of the English Court's process or otherwise unconscionable.  I am not aware of any fact that would take the present Application outside the general rule, or cause it to be regarded by the English Court as abusive or unconscionable.

34.    Based on the current facts as I understand them, the discovery sought here would not be barred by any privilege under English law.

35.    Therefore, I have no basis to believe the High Court would reject any evidence—let alone all the evidence—requested by Petitioners under Section 1782.

36.    The evidence sought in this Application relates to Petitioners' ability to defend against Mr. Soriano's claims.  While Petitioners intend to corroborate their truth defence in part by reference to confidential sources, these efforts will necessarily be limited by Petitioners'

journalistic responsibility to protect those sources. Although Petitioners may obtain certain evidence from Mr. Soriano in the English Defamation Proceeding, evidence is sought by the Section 1782 process to assist them in contesting Mr. Soriano's credibility (particularly if Mr. Soriano testifies on his own behalf during trial).

37.     In sum, Petitioners seek evidence through the Section 1782 process in order to assist them in the English Defamation Action, in particular to assist them in (i) responding to Mr. Soriano's Strike-Out Application; (ii) establishing a legal defence to Mr. Soriano's libel claims; (iii) refuting Mr. Soriano's expected arguments on the accuracy element of his GDPR claims; and (iv) contesting Mr. Soriano's credibility at trial. Petitioners anticipate using this evidence to prepare witness statements and arguments for trial.

*     *     *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 6, 2022
Location: London, England, United Kingdom


_____
**Patrick Doris**

**RECHTSCHAFFEN LAW**
Rechtschaffen Law Offices

8a Green Walk
London NW4 2AJ
Tel.       +44 20 8202 1516
Mob.       +44 793 201 6551
Email:  shlomo@rlawoffices.co.uk

HSBC BANK PLC
8 Canada Square,
London, E14 5HQ

HSBC UK Bank Plc
1 Centenary Square,
Birmingham,
United Kingdom, B1 1HQ

16 January 2023

STRICTLY PRIVATE AND CONFIDENTIAL

URGENT

**22-MC-347 Forensic News LLC & Ors - v - HSBC**

Dear HSBC UK,

I am instructed on behalf of Walter Soriano and USG Security Ltd, who are clients of and holds a
bank account with HSBC UK. Mr Soriano is the CEO of USG Security Ltd ('USG'), a company based
in London. Mr Soriano's and USG's bank details with HSBC are set out below:

> **USG security**
> Sort code 40-01-06
> Account number 82484390
>
> and USD currency account
> Sort Code 40-12-76
> Account Number 70443756
>
> **Walter & Aviv Soriano**
> Sort code 40-01-01
> Account number 92131692

Rechtschaffen Law is a legal practice and the trading name of S.R Law Ltd a limited
liability company registered in England and Wales under no.9212612, authorised and
regulated by the Solicitor Regulation Authority, SRA No. 628596

26

RECHTSCHAFFEN LAW
Rechtschaffen Law Offices

> and USD currency account
> Sort code 40-01-06
> Account number 73569453

It has come to our clients' attention that an application has been made by Forensic News LLC and Scott Stedman against HSBC Bank USA, N.A. in the United States District Court. The application is made pursuant to 28 U.S.C. § 1782 for permission to issue a subpoena for the production of documents. Neither Mr Soriano nor USG hold a bank account with HSBC Bank USA, N.A.

The documents sought from HSBC by Forensic News LLC and Mr Stedman are:

(a) all documents and communications relating to USG Security (including but not limited to financial transactions and accounts), where my client is CEO; and

(b) all documents and communications relating to my client.

Such disclosure should not be made by HSBC, whether by HSBC UK via HSBC Bank USA or at all. I enclose a Link to the documents filed in support of the application for a subpoena, for reference.

**Background**

My client, a British citizen, has issued proceedings against Forensic News LLC, Scott Stedman, its founder, and three contributors, Eric Levai, Jess Coleman and Robert Denault in respect of publications defamatory of him and in breach of his rights under the UK GDPR.

The defendants are in the United States. Mr Soriano obtained permission to sue the defendants in England, a decision upheld on appeal: ***Soriano v Forensic News & Ors*** [2021] EWCA Civ 1952.[1]

Mr Coleman and Mr Denault settled in June 2022. The other defendants have served a Defence and there is to be a preliminary trial on the meaning of the various publications together with my client's application to strike out parts of the Defence as against the remaining defendants on 2 and 3 March 2023 in the High Court.

On 6 December 2022, without first seeking permission or directions from the English Court, Forensic News LLC and Mr Stedman applied in the United States District Court for permission to issue a subpoena, as set out above.

---

[1] https://www.bailii.org/ew/cases/EWCA/Civ/2021/1952.html

Rechtschaffen Law is a legal practice and the trading name of S.R Law Ltd a limited liability company registered in England and Wales under no.9212612, authorised and regulated by the Solicitor Regulation Authority, SRA No. 628596

2

27

RECHTSCHAFFEN LAW
Rechtschaffen Law Offices

**HSBC's duty of confidentiality**

The documents sought by Forensic News LLC and Mr Stedman are private and confidential to my client.

It is well-established that HSBC UK owes my client a duty to keep his affairs secret: ***Tournier v National Provincial and Union Bank of England*** [1924] 1 KB 461. The disclosure of the documents sought would amount to a breach of confidence and a breach of the UK GDPR. We do not consider there is a basis to transfer the data to the United States from HSBC UK nor is there an adequacy decision for the United States allowing such a transfer under Article 45. Our client does not consent to any disclosure by HSBC.

**Errors in the application**

No proper basis is provided for why the disclosure should be ordered, and while the Declaration of Patrick Doris is also produced in support of the application, there are a number of serious errors to which we draw your attention:

(a) at §14, it is suggested that "*the merits proceedings before the High Court formally commenced*" when the Defences were filed. This is incorrect. The merits were raised at the service our application and appeal;

(b) at §17 it is stated that "*the High Court will make a Meaning Determination and resolve Mr. Soriano's Strike-Out Application based on evidence presented by the parties at the preliminary issue trial*". Determination of a natural and ordinary meaning and an application to strike out are heard without evidence. Any disclosure will therefore cannot have a bearing on the matters to be heard;

(c) at §24 it is stated that "*the High Court will not have the jurisdiction or direct ability to compel production of documentary evidence under its* [HSBC Bank USA's] *control*". There is no evidence of this and it is incorrect. The High Court has the power to make third party disclosure orders against foreign respondents (though there is a presumption against extra-territoriality);

Rechtschaffen Law is a legal practice and the trading name of S.R Law Ltd a limited liability company registered in England and Wales under no.9212612, authorised and regulated by the Solicitor Regulation Authority, SRA No. 628596

RECHTSCHAFFEN LAW
Rechtschaffen Law Offices

(d) at §26, again it is stated that "*the evidence sought from HSBC USA is expected to be highly relevant to Petitioners' ability to respond to Mr. Soriano's Strike-Out Application*", when the application is based on the case as set out in the pleadings or statements of case and not on evidence. As set out above, any disclosure cannot not have a bearing on the matters to be heard; and

(e) the justifications of relevance at §27 to §30 reveals that the subpoena is a fishing expedition. The subpoena sought in the Declaration of Anne Champion is broad, unfocussed, and impermissible; and

(f) at §34, it is stated that "*the discovery sought here would not be barred by any privilege under English law*". It is likely such an application would fail if brought in England and Wales given the obligation of the duty of banks to keep affairs secret and the Court's warnings against fishing expeditions of this kind.

It should also be noted that the Declaration of Anne Champion exhibits out of date statements of case, including the unamended Particulars of Claim at Exhibit 9, and fails to exhibit the current Defence.

**What my client requires from you**

In the circumstances, our client is deeply concerned that any such disclosure by HSBC (whether by HSBC UK via USBC Bank USA or howsoever) would be unlawful and be made on an incorrect basis.

1. Please confirm what information and personal data about my client is shared with HSBC Bank USA, N.A.

2. Please explain the steps HSBC will take in order to maintain its duty of confidentiality and its duties under the UK GDPR in relation to my client's information and personal data now sought by Forensic News LLC and Mr Stedman.

3. Please confirm that HSBC will object to the subpoena sought by Forensic News and Mr Stedman.

Rechtschaffen Law is a legal practice and the trading name of S.R Law Ltd a limited liability company registered in England and Wales under no.9212612, authorised and regulated by the Solicitor Regulation Authority, SRA No. 628596

4

RECHTSCHAFFEN LAW
Rechtschaffen Law Offices

As you will note from the Order of District Judge Analisa Torres of the United States District Court of the Southern District of New York, the deadline set for the respondent to file opposition to the motion of Forensic News and Mr Stedman is **20 January 2023**.

Our request is urgent and we would be grateful for your response to the above questions by **4pm** on **18 January 2023**.

My clients' rights are reserved.

Yours faithfully,

**Rechtschaffen Law**

Rechtschaffen Law is a legal practice and the trading name of S.R Law Ltd a limited liability company registered in England and Wales under no.9212612, authorised and regulated by the Solicitor Regulation Authority, SRA No. 628596

5

30

Claim No. QB-2020-002450

**IN THE HIGH COURT OF JUSTICE**

**KING'S BENCH DIVISION**

**MEDIA AND COMMUNICATIONS LIST**

**B E T W E E N:**

### WALTER TZVI SORIANO

Claimant

**- and -**

### (1) FORENSIC NEWS LLC
### (2) SCOTT STEDMAN
### (3) ERIC LEVAI
### (4) ~~JESS COLEMAN~~
### (5) ~~ROBERT DENAULT~~

Defendants

_____

**draft ORDER**

_____

**UPON** the First and Second Defendants having commenced proceedings in the District Court of the Southern District of New York against HSBC Bank USA NA under 28 USC §1782 ("the 1782 application")

**AND UPON** the Claimant having applied by notice dated 19 January 2023 to restrain those proceedings

**AND UPON** reading the written evidence filed

**AND UPON** hearing [xxx]

**IT IS ORDERED THAT:**

1.  The First and Second Defendant shall immediately:

    a.  withdraw the 1782 Application;

      b.  refrain from taking any further step as against HSBC Bank USA NA in any US Court.

2.  The First and Second Defendant shall pay the Claimant's costs of the application, summarily assessed on the indemnity basis in the sum of £[xxx].