**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application of FORENSIC NEWS LLC and
SCOTT STEDMAN for an Order Pursuant to 28
U.S.C. § 1782 to Conduct Discovery for Use in a
Foreign Proceeding.

Case No. 22-MC-347 (AT)

**MEMORANDUM OF LAW IN IN FURTHER SUPPORT OF PETITIONERS'**
**APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

ARGUMENT ...................................................................................................... 6

    I.    The Court Should Grant Petitioners' Application for Discovery. ................................. 6

        1.    Soriano Lacks Standing To Argue A Subpoena Directed Towards HSBC USA Is Too Burdensome (And In Any Event It Is Not)........................................ 7

        2.    This Application Circumvents No U.K. Proof-Gathering Restrictions. ............... 10

    II.    The Court Should Deny Soriano's Request to Stay. ..................................................... 12

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)........................................................................8

*In re Al-Attabi*,
2022 WL 1640806 (S.D.N.Y. May 24, 2022) .........................................15

*In re Apotex Inc.*,
2009 WL 618243 (S.D.N.Y. March 9, 2009) ...........................................8

*In re Auto-Guadaloupe Investissement S.A.*,
2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ..........................................8

*In re Bank Otkritie Fin. Corp.*,
2022 WL 2384169 (S.D.N.Y. July 1, 2022)............................................14

*In re Batbold*,
2021 WL 4596536 (S.D.N.Y. Oct. 6, 2021) ...........................................10

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012)....................................................................8, 10

*In re Elvis Presley Enterprises LLC*,
2016 WL 843380 (S.D.N.Y. Mar. 1, 2016) ..........................................8, 10

*In re Gushlak*,
2012 WL 2564466 .....................................................................................15

*In re Hellard*,
2022 WL 2819408 (S.D.N.Y. July 19, 2022)..........................................7, 9

*In re Inv. Bank PSC*,
567 F. Supp. 3d 449 (S.D.N.Y. 2021)......................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).......................................................................... *passim*

*In re Iraq Telecom Ltd.*,
2019 WL 3798059 .....................................................................................10

*In re Iraq Telecom Ltd.*,
2020 WL 1876301 .....................................................................................15

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re JSC BTA Bank*,
   577 F. Supp. 3d 262 (S.D.N.Y. 2021)...................................................................7, 9

*Koopmann v. Robert Bosch, LLC*,
   2018 WL 9917679 (S.D.N.Y. May 25, 2018) ...........................................................8

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)..................................................................................9, 10

*Nken v. Holder*,
   555 U.S. 418 (2009).................................................................................................12

*In re OOO Promnefstroy*,
   2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ...........................................................8

*In re Postalis*,
   2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ...........................................................8

*In re Safra*,
   2022 WL 3584541 .............................................................................................10, 11

*Sarr v. Garland*,
   50 F.4th 326 (2d Cir. 2022) ....................................................................................13

*Trout Point Lodge, Ltd. v. Handshoe*,
   729 F.3d 481 (5th Cir. 2003) ..................................................................................15

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
   2020 WL 2793055 (S.D.N.Y. May 29, 2020) .......................................................7, 9

*In re XPO Logistics, Inc.*,
   2017 WL 2226593 (S.D.N.Y. May 22, 2017), aff'd, 2017 WL 6343689
   (S.D.N.Y. Dec. 11, 2017)..........................................................................................9

*In re YS GM Marfin II LLC*,
   2022 WL 624291 (S.D.N.Y. Mar. 2, 2022) ..............................................................9

**Statutes**

28 U.S.C. § 1782.................................................................................................... *passim*

28 U.S.C. § 4102.......................................................................................................15

**Rules**

Fed. R. Civ. P. 26.......................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Fed. R. Civ. P. 45...........................................................................................................7

## INTRODUCTION[1]

Through their dogged investigative journalism, Petitioners—an American news organization and its founder—uncovered a network of connections between putative intervenor Walter Soriano, his security company USG Security LTD ("USG"), and core figures reportedly associated with alleged Russian interference in the 2016 United States presidential election. Soriano sought to silence this critical reporting by filing a meritless defamation action against Petitioners. He did so in the United Kingdom—even though Petitioners are located in the U.S., and only in the U.S.—where speech protections are less robust than they are in the United States—a paradigmatic example of the recognized phenomenon of "libel tourism."

In the U.K., in order to succeed with a truth defense in a defamation action, a defamation *defendant* bears the burden of establishing the truth of the reporting. Seeking further evidence to support the truth of their reporting, Petitioners have filed a series of discovery applications under 28 U.S.C. § 1782 to obtain discovery from U.S. sources. District courts in this circuit have granted three of Petitioners' applications in full. But now, on the fourth such application, which seeks records from HSBC USA, to which HSBC USA has itself asserted no objection, Soriano seeks to obstruct discovery and impede Petitioners' defense abroad. Specifically, Soriano moves to intervene to oppose this Section 1782 application and, in the alternative, to seek a stay. His opposition should be rejected.

As Petitioners have recently explained to the High Court in London, Petitioners need this discovery. And they need it expeditiously. *See* Crain Ex. 3. Petitioners are seeking banking

---

[1] Capitalized terms have same meaning as in Petitioners' opening brief. *See* Dkt. 4. "Mem." refers to Petitioners' opening brief, Dkt. 4. "Mot." refers to Soriano's opposition brief, Dkt. 16. "Crain Decl." refers to the Declaration of Lee Crain submitted in connection with this reply brief. "Champion Decl." and "Doris Decl." refer to the Declarations of Anne Champion and Patrick Doris filed in connection with Petitioners' Application, Dkts. 5–6.

records from HSBC USA—a correspondent bank with which Soriano has no apparent direct banking relationship. Petitioners seek records of transactions made by Soriano and USG. Those records will reveal that Soriano has directly associated with a known computer hacker as Petitioners reported to the American public, belying Soriano's denials. The records will show he has even sent payments from his bank account in the U.K. through HSBC USA to that hacker in the United States—a convicted criminal Petitioners deposed in another Section 1782 proceeding.

Petitioners intend to use these records to amend their defense in the English Defamation Action. They intend to do so in connection with the hearings scheduled for March 2 and 3, 2023, in which the High Court will address the sufficiency of Petitioners' defense. Doris Decl. ¶ 17. As Petitioners' U.K. counsel has explained to the High Court, that hearing is a "crucial juncture in the litigation." Crain Decl., Ex. 3 ¶¶ 14, 26. For that reason, Petitioners cannot wait for discovery in the English Defamation Action before they seek records in their defense. Any delay in discovery here will hamper Petitioners' opportunity to amend and add new defenses there.

Soriano knows all of this. That is why he seeks to gum up this proceeding and delay the discovery Petitioners seek. He knows the records sought from HSBC USA are relevant and damning and that Petitioners need them in time to amend. That is precisely why he is playing games by not only seeking to oppose discovery in this Court on feckless grounds but also filing a needless, duplicative application in London (the "Anti-Suit Application") asking the High Court to quash a U.S. federal subpoena sought by U.S. citizens pursuant to a U.S. statute that permits parties to a foreign litigation to seek leave from a U.S. court to take discovery for use in that foreign proceeding from U.S. sources. This Court should not reward Soriano's gamesmanship.

Petitioners do not oppose Soriano's motion to intervene, but his opposition to this Section 1782 application is meritless. Soriano concedes Petitioners have satisfied *all* of the statutory

factors under Section 1782 as well as two of the four discretionary factors.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  He argues only that the two remaining discretionary factors tilt against discovery because the subpoena is unduly burdensome for HSBC USA and more burdensome than U.K. law permits.  Both claims are meritless.  Soriano lacks standing to assert HSBC USA's burden claim.  And in any event he is wrong: the subpoena poses minimal burden and seeks easily accessible records.  Petitioners seek only records of Soriano and USG's transactions that went through this specific correspondent bank during the relevant time period.  Soriano's second argument boils down to his gripe that the scope of discovery permissible in U.K. courts is in certain instances narrower than what American rules provide.  But that is true of almost all Section 1782 proceedings, given American principles favoring liberal discovery to aid judicial truth-finding.  Soriano points to no specific rule under U.K. law that Petitioners would be "circumventing" by procuring this critical evidence from a U.S. source.

His stay application is likewise meritless.  The U.K. Court is likely to resolve the Anti-Suit Application one business day after Petitioners file this brief, mooting the stay request entirely.  At Soriano's request, the U.K. Court scheduled a hearing on the Anti-Suit Application for February 6, 2023, and will likely issue a decision on that date, if not shortly thereafter.  If Soriano obtains the complete relief he seeks, Petitioners will have no choice but to comply with the U.K. order and face yet another obstacle in defending their American reporting in a foreign court.  If Soriano fails, he will have no basis to come into this Court and relitigate his loss.  In any event, even if his stay application is not moot, Soriano has failed to show that he is likely to succeed on the merits, that he will face irreparable harm absent a stay, that the balance of equities tilts in his favor, or that the public interest favors a stay.

Soriano's own U.S. counsel has recognized that the English Defamation Action "is a case that very much turns on its facts."[2]  All Petitioners ask is that this Court permit them to exercise the rights granted to them by Section 1782 to obtain documentary proof of the relevant facts. Failure to do so will reward Soriano, a paradigmatic libel tourist, for his forum-shopping and gamesmanship.  Consistent with federal law and policy, this Court should exercise its discretion to permit the discovery sought, which will aid these American journalists in defense of their reporting on issues of critical public concern and to expose Soriano's falsehoods and misdeeds once and for all.  This Court should grant the Petition.

## BACKGROUND

This is the fourth Section 1782 application arising out of the English Defamation Action. Each of the previous three applications has been granted, and Petitioners have deposed three individuals with relevant information—Richard Frankel, Aviram Azari, and Mark Rossini. Champion Decl. Ex. 20, 23, 25.  Frankel is a former FBI agent who worked for Soriano at USG. *Id.* Ex. 19 at 7.  Azari is a former Israeli private detective and now convicted criminal computer hacker who is believed to have previously worked with Soriano and USG.  *Id.* Ex. 24 at 11. Specifically**,** Petitioners have reason to believe that Soriano hired Azari to provide services on behalf of Russian oligarch clients, which would undermine Soriano's claim that he never "provid[ed] private illegal hacking and spying services."  *Id.* Ex. 9 ¶ 12.6.3.  Rossini is a former FBI agent who, like Frankel, worked for Soriano at USG.  *Id.* Ex. 22 at 17–18.  Based on the time period Rossini worked at USG, Petitioners believed he could shed light on key events at the center of Soriano's dispute with Petitioners' reporting.  Rossini and Azari have both recently been

---

[2]    Mark Lubbock, BROWN RUDNICK, Soriano v. Forensic News – *Can A US Corporation With No EU Operations Be Caught By The GDPR* (March 15, 2021), https://bit.ly/3wVs8dA.

charged with criminal offenses by U.S. authorities.  Rossini was indicted in the District of Puerto Rico in 2022 in connection with an alleged influence peddling scheme involving then-Puerto Rico Governor Wanda Vazquez Garced.[3]  Azari was indicted in the Southern District of New York for his involvement in a hacking scheme and has since pled guilty to four charges.  During their depositions, Azari and Rossini repeatedly invoked their Fifth Amendment privilege against self-incrimination to avoid answering questions regarding their relationship with Soriano.  *See generally id*. Ex. 11.

Petitioners filed this Section 1782 proceeding because they obtained information demonstrating that HSBC USA was in possession of bank records that would provide further proof of the truth of their original reporting.  As Petitioners' counsel explained to the U.K. Court, "in October 2022, my colleagues at Gibson Dunn US became aware of relevant records of HSBC USA, which I have seen, and which appear to show that payments were made from USG"—Soriano's security firm—"to a company . . . which I understand to be associated with Mr. Azari." Crain Decl. Ex. 3 ¶ 9.  Those records help prove Soriano's relationship with and payments to at least one known (and criminally convicted) computer hacker.  The subpoena Petitioners seek leave to serve targets these records and other records that may shed light on the dealings and associations Petitioners reported on and now undergird the allegations in the English Defamation Action.

On January 20, 2023, Soriano moved to intervene in this action to oppose the Section 1782 proceeding.  Dkt. No. 15.  Soriano's counsel did not meet and confer with Petitioners prior to

---

[3]   Petitioners deposed Rossini on January 13, 2023.  During that deposition, Rossini improperly invoked his Fifth Amendment privilege numerous times, and has withheld documents based on the act of production privilege.  Petitioners have challenged these privilege invocations before Magistrate Judge Lehrburger, who has directed Petitioners to reply to Rossini's opposition letter on February 6, 2022.  *See In re Forensic News LLC*, Case No. 22-mc-229 (ALC) (RWL), at Dkt. 19 (S.D.N.Y. Jan. 24, 2023); *id*. at Dkt. 22 (S.D.N.Y. Jan. 27, 2023).

moving to intervene, so the same afternoon Soriano filed in this Court, Petitioners requested that the parties meet and confer to discuss his objections to the Section 1782 application and Petitioners' subpoena. Crain Decl. Ex. 1 at 6. That meet and confer occurred on Friday, January 27, 2023. *Id.* at 1. During the discussion, Petitioners' counsel asked Soriano's counsel to explain his claim that the subpoena Petitioners seek to serve on HSBC USA was "unduly burdensome" and asked what burden, if any, the subpoenas imposed on him. *Id.* Soriano's counsel could not identify any burden and acknowledged that the subpoena did not require him to produce anything. *Id.* Soriano's counsel also refused to participate in any good faith discussion of how the subpoena could be narrowed to address his alleged concerns. *Id.* Petitioners also asked Soriano's counsel to explain the justification for seeking to oppose discovery in this Court (the appropriate forum) and a U.K. court at the same time. *Id.* Counsel provided no such explanation and have yet to do so. *Id.*

Petitioners remain willing to meet and confer with Soriano and HSBC USA if this Court grants the Petition. Indeed, before Soriano intervened, Petitioners and HSBC USA had already engaged in productive discussions over the scope of any future production. And Petitioners are of course willing to enter into a protective order to assuage any confidentiality concerns Soriano may have with respect to the records.

**ARGUMENT**

### I.    The Court Should Grant Petitioners' Application for Discovery.

Soriano does not argue that Petitioners failed to satisfy any statutory requirement for discovery under Section 1782. Mem. 16–18. Nor could he, as three other courts have already determined that Petitioners met these requirements with respect to applications arising from the English Defamation Action. *See* Champion Decl. Ex. 20, 23, 25. Nor does Soriano challenge whether two of the four discretionary *Intel* factors favor allowing discovery here. Namely, he

6

concedes HSBC USA is not party to the English Defamation Action, and that U.K. courts are "receptive[e] … to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 244, 264.

Instead, he challenges only two *Intel* factors. He first argues that Petitioners' proposed subpoena is unduly burdensome. He then argues that Petitioners' application seeks to circumvent foreign proof gathering restrictions. Both argument are meritless. This Court should reject Soriano's positions and grant Petitioners leave to serve the subpoena on HSBC USA.

### 1.   Soriano Lacks Standing To Argue A Subpoena Directed Towards HSBC USA Is Too Burdensome (And In Any Event It Is Not).

Soriano first argues that Petitioners' proposed subpoena should be rejected as "unduly burdensome." Mot. 5–9. Not so. As an initial matter, because Soriano lacks standing to assert a burden objection that belongs to HSBC, this Court can reject Soriano's burden argument. *See, e.g.*, *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020). As Soriano's counsel conceded during the recent meet and confer, the subpoena will require Soriano to produce nothing at all. *See* Crain Decl., Ex. 1 at 1. Instead, the two document requests Petitioners have proposed to serve are directed towards HSBC USA only. *See In re JSC BTA Bank*, 577 F. Supp. 3d 262, 268 (S.D.N.Y. 2021) (rejecting intervenor's objections to Section 1782 application, noting subpoena respondents "are in the best position to know if the requests are burdensome" and "will have an opportunity to object to the subpoenas").

Soriano's reliance on Rules 26 and 45 of the Federal Rules of Civil Procedure is misplaced for the same reason. *See* Mot. 7–8. Those rules do not authorize third-party standing for an individual who is not the "subpoenaed party" to step in and advance the burden arguments of that party. *In re Hellard*, 2022 WL 2819408, at *4 (S.D.N.Y. July 19, 2022) (intervenor was "not the subpoenaed party" and had "not identified any privileged information or other protectable interest that would give it standing to object"). This Court set a deadline for HSBC USA to file any

7

opposition to the application or subpoena, and HSBC USA asserted no objection.  Dkt. 11 at 1.

Soriano should not be allowed to interpose objections that, if they had any merit at all, would need

to be asserted by HSBC USA.  This discretionary *Intel* factor therefore weighs in favor of

discovery.[4]

      Even if Soriano had standing to advance a burden argument for HSBC USA that HSBC

USA did not bother to make, that argument would fail on its merits.  Petitioners' proposed

subpoena contains only two requests, and seeks only financial records of transactions that passed

through HSBC USA.  Petitioners do not seek emails, ESI, or paper records.  Champion Decl. Ex.

1 at 10.  They do not seek files from multiple business entities, *In re OOO Promnefstroy*, 2009

WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009), or documents from outside the relevant timeframe,

*In re Auto-Guadaloupe Investissement S.A.*, 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012).

Responding to the subpoena will not require HSBC to run "onerous searches," *In re Apotex Inc.*,

2009 WL 618243, at *3 (S.D.N.Y. March 9, 2009), or incur "significant expense," *Koopmann v.

Robert Bosch, LLC*, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018).  Instead, the subpoena

will require HSBC to run targeted searches of its banking records—for transactions related to

Soriano and USG.  If HSBC USA finds that any aspect of searching for or producing responsive

documents imposes an undue burden, HSBC USA can raise those concerns to Petitioners during

the meet and confer process.  In fact, Petitioners have already started negotiations with HSBC

---

[4]   Most of Soriano's cases address only motions to quash by the discovery target—not a third
party to the subpoena like Soriano.  *See, e.g.*, *In re Postalis*, 2018 WL 6725406 (S.D.N.Y. Dec.
20, 2018); *In re Elvis Presley Enterprises LLC*, 2016 WL 843380 (S.D.N.Y. Mar. 1, 2016).
Soriano cites two cases in which an intervening party objected to a subpoena, but neither case
helps him.  In *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012),
the Second Circuit reversed an order quashing a subpoena under Section 1782.  And in *In re
Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017), the Circuit affirmed the grant of a
Section 1782 petition.

USA to take reasonable steps to reduce any burden imposed by the subpoena, including discussing certain limitations on scope. *See In re Hellard*, 2022 WL 2819408, at *3 (finding the parties' ongoing negotiations on burden and scope weighed against an intervenor's claim that the subpoena was unduly burdensome); Crain Decl. Ex. 1 at 1. There is thus no grounds to disallow the subpoena. *See In re JSC BTA Bank*, 577 F. Supp. 3d at 268.

The subpoena also is not "unduly" burdensome given the critical nature of the evidence Petitioners seek. *See In re XPO Logistics, Inc.*, 2017 WL 2226593, at *10 (S.D.N.Y. May 22, 2017), *aff'd*, 2017 WL 6343689 (S.D.N.Y. Dec. 11, 2017). The records sought are highly relevant to Petitioners' truth defense. The evidence obtained in response to the subpoena—which will show dollar denominated transactions between Soriano's company, USG, and various persons and entities—will help Petitioners plead (and prove) that Soriano (i) "is the middle man for a network of illegal Israeli hacking firms"; (ii) "hires hackers to illegally spy on his clients' enemies"; and (iii) makes or has made illegal arrangements, including "illegal hacking and spying services," for his clients. Soriano's insinuation that the subpoena is not tailored "to elicit any potentially information relevant [sic]," Mot. 6, is false. It strains credulity that Soriano would seek an "anti-suit injunction" in the U.S. on top of moving to intervene here to quash the subpoena if he were not aware that the discovery sought would contain relevant information.

Finally, even if the Court were to find the subpoena to be unduly burdensome (despite no objections in this regard being raised by the target), "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) (citation omitted); *see also In re YS GM Marfin II LLC*, 2022 WL 624291, at *11 (S.D.N.Y. Mar. 2, 2022); *Union Fenosa Gas, S.A. v.*

*Depository Tr. Co.*, 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020).  In sum, the fourth discretionary *Intel* factor squarely weighs in favor of Petitioners.  The proposed subpoena is not unduly burdensome—let alone so burdensome that the Court should take the unusual step of denying Petitioners' Application outright.[5]

### 2.      This Application Circumvents No U.K. Proof-Gathering Restrictions.

Soriano next argues that Petitioners' application circumvents U.K. restrictions on proof-gathering.  Not so.  As courts in this district have consistently held, this third *Intel* factor favors granting discovery where "nothing in the record exists to establish that [foreign] law or policy prohibits this type of discovery such that [petitioner] is making his application in an attempt to circumvent [foreign] law."  *In re Safra*, 2022 WL 3584541, at *6.  That is the case here.

Soriano argues that the breadth of the discovery requested demonstrates an attempt to circumvent U.K. discovery law because it "greatly exceeds the more limited scope of permissible disclosure in the U.K. Action."  Mot. 9.  He proffers no competent evidence to support this argument.  But even if he had, the Second Circuit has specifically held that discoverability and admissibility in the foreign proceeding are irrelevant to a Section 1782 application.  *See Brandi-Dohrn*, 673 F.3d at 82.  Only where a country has an affirmative policy "*prohibit*[*ing*] the acquisition or use of certain materials" does the third factor weigh against the petitioner.  *Mees*, 793 F.3d at 303 n.20; *see also In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *4 ("[M]erely categorizing Petitioner's requests as 'broad' does not show that Petitioner's requests exceed the scope of any specific proof-gathering restriction").  Soriano cites no provision of U.K. law prohibiting the acquisition of the financial information sought, because none exists.  *See* Crain

---

[5]    Although in one case Soriano cites, the court denied rather than limited discovery, it did so because the petitioner made no effort to narrow its requests.  *In re Elvis*, 2016 WL 843380, at *6.  Here, Petitioners already began negotiations with HSBC USA.  Crain Decl. Ex. 1 at 1.

Decl. Ex. 4 at ¶ 19; *In re Batbold*, 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021).

Soriano does not identify a single rule, case, or other legal authority for the proposition that some U.K. proof-gathering restriction exists that Petitioners are seeking to circumvent.  Instead, he proffers his own solicitor's "opinion" that the "breadth" of the discovery Petitioners seek "would likely be impermissible by the High Court in the U.K. Action, which exercises careful oversight and control, in particularly in the context of confidential banking information." Rechtschaffen Decl. ¶ 15.  But this Court, too, exercises "careful oversight and control" over discovery under the Federal Rules of Civil Procedure.  In fact, Soriano's allegation that Petitioners could "just as easily" obtain similar records in the U.K. "without resorting to foreign discovery" defeats his argument.  Mot. 8 & n.5.  If the evidence is accessible in the U.K., a request for that evidence here necessarily circumvents no U.K. proof-gathering restriction.  Soriano's argument thus boils down to the assertion that Petitioners should be forced to seek discovery in the U.K. first.  But "Section 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court."  *In re Safra*, 2022 WL 3584541, at *6.  In addition, Petitioners here do not argue that HSBC USA should be required to produce records in the unique possession of HSBC U.K.; rather, Petitioners seek only those records in the actual possession of HSBC USA.

Nor is there any evidence supporting Soriano's accusation that Petitioners have propounded their requests in bad faith.  *See* Mot. 10.  Soriano claims that the date range of the subpoena "alone" supports that Petitioners' application is a "fishing expedition."  *Id*. at 6, 9.  The subpoena is far from a "fishing expedition."  Crain Decl. Ex. 3 ¶¶ 9–10.  Indeed, counsel has *seen* some of the responsive records, which unquestionably reflect relevant information.  And as Petitioners have explained, the subpoena seeks financial information relating to Soriano and USG

11

during a discrete time period that corresponds with the events and facts underlying statements made in Petitioners' articles, the truth of which Soriano challenges in the U.K. action. The time period begins in 2007 because, according to Petitioners' reporting, Soriano was identified by Israeli Prime Minister Benjamin Netanyahu as "very likely to be a big donor" to Netanyahu's 2007 presidential campaign. Champion Decl. Ex. 4 at 11. Proof of donations from Soriano to this campaign, including dollar-denominated transactions passed through HSBC USA, would defeat Soriano's claim that he "has never donated to the Netanyahu campaign." *Id*. Ex. 9 at 14. The time period also coincides with the onset of Soriano's employment by Ruth Parasol, an American businesswoman who hired Soriano in 2008. *Id*. Ex. 4 at 17. Parasol is Petitioners' source for several challenged statements regarding Soriano's military service and his claims that he "had 'killed people.'" *Id*. Ex. 4 at 18; *see Id*. Ex. 9 at 15 (denying these facts). And Petitioners have already discussed with HSBC USA potential limitations to the time period to comport with HSBC USA's document retention policies. Crain Decl. Ex. 1 at 1.

Soriano fails to identify any U.K. procedure Petitioners are purportedly circumventing. Nor does he identify a scintilla of evidence Petitioners have acted in bad faith. If anything, he has confirmed his own. Like the other factors, this *Intel* discretionary factor weighs squarely in favor of Petitioners. This Court should grant Petitioners' Section 1782 application.

## II. The Court Should Deny Soriano's Request to Stay.

Soriano's alternative motion to stay discovery pending resolution of the Anti-Suit Application likewise lacks merit. To justify a stay, Soriano must make a "strong showing" of his likelihood to succeed on the merits of his U.K. application, irreparable harm absent relief here, that the balance of equities tips in his favor, and that the public interest favors a stay. *See Nken v. Holder*, 555 U.S. 418, 434 (2009). He cannot meet any of those elements and his stay request will be mooted in a matter of days. This Court should decline to stay these proceedings.

*1. **Moot**.*  Soriano's stay request will likely be moot in days.  Soriano asked the U.K. Court to set his Anti-Suit Injunction for an expedited hearing, and it did so.  Crain Decl. Ex. 2 at 2, Ex. 4 at 1.  On February 6, 2023—one business day after this brief is due—the High Court will likely resolve his application there, if not shortly thereafter.  *Id*.  Whether it grants or denies him relief, his request for a stay pending resolution of his Anti-Suit Injunction is needless, given how quickly resolution will likely be reached.  This Court should deny his stay request as moot.

*2. **Not Likely To Succeed***.  Even if the stay request is not moot, Soriano has failed to make the requisite "strong showing" that he is likely to succeed on the merits of the Anti-Suit Application.  *See Sarr v. Garland*, 50 F.4th 326, 331 (2d Cir. 2022).  It is a fundamental principle of U.K. law that U.K. courts do not, in general, control the manner in which a party obtains evidence.  Crain Decl. Ex. 4 ¶ 17.  Seeking to exercise a right available under U.S. law is not considered to be an interference with the procedure of the U.K. court, even if the procedure in the U.S. court differs from that in the U.K.  *Id*.  Soriano alleges that Petitioners' Application is "vexatious, oppressive, and unconscionable."  *Id*. Ex. 2 at 1.  Yet he lacks any credible evidence to support these allegations.  *See id.* Ex. 4 ¶ 17  Nor can Soriano argue that Petitioners have sought to subpoena HSBC USA without cause.  As Petitioners explained to the U.K. Court, they have actually "seen" a portion of the HSBC USA records sought, "which appear to show that payments were made from USG to . . . a company . . . associated with Mr. Azari"—the convicted computer hacker.  *Id*. Ex. 3 ¶ 5.  Petitioners explained precisely how those records defeat specific defamation claims Soriano has levied and will serve to impeach him at any ultimate trial.  *Id*. Ex. 3 ¶ 13.  In light of these concrete records, the Section 1782 application "cannot reasonably be characterized as vexatious, oppressive, or unconscionable."  *Id.* Ex. 3 ¶ 34.  And Soriano is unlikely to succeed on the merits of his Anti-Suit Application.

*3.  No Irreparable Harm.*  Soriano will not be irreparably harmed by the disclosure of the these documents.  Courts in this district routinely order financial institutions to disclose bank records in discovery, including pursuant to Section 1782.  *See In re Bank Otkritie Fin. Corp*., 2022 WL 2384169, at *1 (S.D.N.Y. July 1, 2022) (granting Section 1782 application to subpoena "banking records from three bank entities" for U.K. proceeding); *In re Inv. Bank PSC*, 567 F. Supp. 3d 449, 450 (S.D.N.Y. 2021) (granting Section 1782 application for wire transfer records and other financial information from 17 banks).  In any event, Soriano argues that the information reflected in records Petitioners seek here might also be recoverable in the U.K. Mot. 8 & n.5.  His only objection, then, appears to be that he does not want Petitioners to have access to that information *now—i.e.*, at the time they need evidence to justify asserting additional truth defenses.  But discovery earlier than he wants it to occur causes him no harm whatsoever—let alone irreparable harm.  To the extent Soriano argues an alleged breach of confidentiality is irreparable, Petitioners are willing to enter into a protective order to assuage his concerns.

*4.  Balance of Equities Favors Petitioners.*  Because a stay will substantially injure Petitioners, the balance of the equities tilts against Soriano's request.  In just over a month, Petitioners must defend against Soriano's application seeking an order striking their currently pleaded truth defense.  Doris Decl. ¶ 17.  This hearing is a "crucial juncture" in the English Defamation Action, and Petitioners need to amend their defense "as soon as possible" to protect their case.  Crain Decl. Ex. 3 ¶¶ 14, 26.  The balance of equities also strongly tilt against Soriano given his persistent forum-shopping.  Soriano is a libel tourist who seeks to silence and chill American journalism by attacking it abroad.  His gamesmanship continues with this very application, having inexplicably asked a U.K. court to quash a Section 1782 proceeding while at the same time seeking to intervene here.  This Court should not reward Soriano with a stay.

*5. **Public Interest.*** A stay will harm the public's interest in two ways. *First*, Congress decreed that federal policy is to help defendants in foreign SLAPP suits *resist* cases filed by libel tourists like Soriano, who seek to take advantage of lax foreign speech protections to suppress, silence, and chill U.S. reporting. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2003). For that reason, Congress passed the SPEECH Act, imposing heightened requirements for any foreign defamation plaintiff who wants to domesticate a foreign defamation judgment in the United States. 28 U.S.C. § 4102. Consistent with the SPEECH Act's policy to protect American speech from libel tourists, this Court should decline to stay this proceeding and delay the discovery Soriano so desperately wants to keep from the English court.

*Second*, a stay is not in public interest. "[I]t is well established that the use of the materials gathered through discovery serve the 'public interests in justice, fair play, and full disclosure.'" *In re Al-Attabi*, 2022 WL 1640806, at *3 (S.D.N.Y. May 24, 2022). "[G]ranting the stay would thwart the purpose of § 1782.'" *In re Iraq Telecom Ltd.*, 2020 WL 1876301, at *1, 4. "Congress empowered federal courts to issue orders of judicial assistance so that litigants in international litigation would have an efficient way to get the discovery they need and to encourage foreign countries by example to provide similar means of assistance to our courts." *In re Gushlak*, 2012 WL 2564466, at *8, *r&r adopted*, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012). Granting a stay "would plainly undermine both of these salutary goals." *Id*.[6]

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court deny Soriano's request for a stay and grant Petitioners' Section 1782 Petition.

---

[6]  Concerns about comity or "judicial [in]efficiency," Mot. 11, do not favor a stay. Soriano *created* inefficiency by filing his duplicative U.K. application  U.K. at the same time he followed the proper procedure in this Court.

Dated:  February 3, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


*/s/ Anne Champion*
Anne Champion
Lee R. Crain
Erica Sollazzo Payne
Catherine McCaffrey
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: (212) 351-3883
Facsimile:  (212) 351-5303


*Attorneys for Petitioners*
*Forensic News LLC and Scott Stedman*