# EXHIBIT 3

1. Defendants (1)-(3)
2. P. Doris
3. Fourth
4. Exhibit PD-4
5. 1 February 2023

Claim No. QB-2020-002450

**IN THE HIGH COURT OF JUSTICE**
**KING'S BENCH DIVISION**
**MEDIA AND COMMUNICATIONS LIST**

**B E T W E E N**

WALTER TZVI SORIANO

Applicant / Claimant

– and –

(1) FORENSIC NEWS LLC
(2) SCOTT STEDMAN
(3) ERIC LEVAI
(4) ~~JESS COLEMAN~~ (Settled)
(5) ~~ROBERT DENAULT~~ (Settled)
(6) ~~RICHARD SILVERSTEIN~~ (Settled)

Respondents / Defendants

---

**FOURTH WITNESS STATEMENT OF PATRICK DORIS**

---

I, **PATRICK DORIS**, of Telephone House, 2-4 Temple Avenue, London, EC4Y 0HB, **WILL SAY AS FOLLOWS**:

1. I am a solicitor and partner at Gibson, Dunn & Crutcher UK LLP, solicitors for the First to Third Defendants in this matter. I supervise the conduct of this matter on behalf of the First to Third Defendants and am duly authorised by them to make this witness statement on their behalf. I have been assisted throughout this matter by counsel specialising in defamation and press freedom matters, and have taken guidance from him on all matters of strategy regarding pleadings and evidence.

2. I make this witness statement in support of the First to Third Defendants' response to the Claimant's application by application notice dated 19 January 2023 (the

"Injunction Application") for an injunction restraining the First and Second Defendants' application in the District Court of the Southern District of New York (the "**NY Court**") under United States Statute 28 USC §1782 for specific disclosure by a third party (the "**1782 (HSBC) Application**").

3. Except where otherwise indicated, the facts set out in this statement are derived from my own knowledge or from information provided to me by colleagues at Gibson, Dunn & Crutcher UK LLP and Gibson, Dunn & Crutcher LLP ("**Gibson Dunn US**"), the Defendants' legal counsel in the US, who are involved in the conduct of this matter, and they are true to the best of my information and belief. Where any facts or matters do not derive from a source referred to in the previous sentence, I have stated the source of these facts or matters, and I confirm that they are true to the best of my information and belief.

4. There is now produced and shown to me a paginated bundle of documents marked "**PD-4**". Page references in this statement are references to exhibit PD-4.

**Background**

5. These proceedings were issued by the Claimant in July 2020 in relation to a series of eight publications. The background to these proceedings is summarised by Lord Justice Warby in paragraphs 2 to 10 of his judgment of 21 December 2021 ([2021] EWCA Civ 1952) (the "**Court of Appeal Judgment**"). I set out below the key procedural facts relevant for present purposes:

    (a) Following the Court of Appeal Judgment and pursuant to the Court of Appeal's order made on the same date, the Claimant served on the Defendants his Re-Amended Particulars of Claim on 10 January 2022. Only seven of the original eight publications, referred to in the Claimant's Re-Amended Particulars of Claim as publications 2 to 8 (the "**Publications**") now remain in dispute. In this statement, I adopt the same numbering of the publications as used in the Claimant's Re-Amended Particulars of Claim.

    (b) On 16 March 2022, the Defendants filed and served their Defence.

2

(c)  In or around late June 2022, the Claimant reached settlement with the Fourth and Fifth Defendants. My firm did not represent the Sixth Defendant. I refer to the First to Third Defendants in this statement collectively as the "**Defendants**".

(d)  By application notice dated 16 June 2022, the Claimant applied to the court for (among other things):

  (i)  a determination of the natural and ordinary meaning(s) borne by the Publications and whether the words complained of, in the meanings found, are defamatory of the Claimant at common law (the "**Meaning Determination Application**"); and

  (ii) an order striking out certain paragraphs in the Defendants' Defence (the **Strike Out Application**"), such paragraphs representing the Defendants' defences under sections 2 and 4 of the Defamation Act 2013, to which I refer in this statement as the Defendants' truth defence and public interest defence respectively.

(e)  By order of Mr Justice Nicklin dated 28 October 2022, a hearing was to be listed to deal with the Claimant's Meaning Determination Application and Strike Out Application. This hearing has now been listed for 2-3 March 2023 (the "**Meaning and Strike Out Hearing**").

(f)  United States Statute 28 USC §1782 ("**Section 1782**") empowers a US court to order a person *"to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal"*. As part of their efforts to gather evidence, between January and November 2022, the Defendants made three applications pursuant to Section 1782 against individuals who they believe to hold evidence bearing directly on various of the statements made in the Publications. These individuals are:

  (i)  Richard Frankel, a former FBI agent, who testified on 24 May 2022;

3

(ii) Aviram Azari, a convicted hacker whom I describe further in paragraphs 8 to 9 below, who testified on 2 November 2022; and

(iii) Mark Rossini, a former FBI agent who is under criminal indictment, and who claims to have previously worked as a contractor for the Claimant's company, USG Security Limited ("**USG**"). Mr Rossini testified on 13 January 2023.

**Records sought by way of the 1782 (HSBC) Application**

6. On 6 December 2022, Gibson Dunn US filed the 1782 (HSBC) Application on behalf of the Defendants requesting the issue of a subpoena for the production of records from HSBC Bank USA, N.A. ("**HSBC USA**") (**PD-4/2-194**). HSBC USA is a distinct entity within the HSBC Group (**PD-4/195**).

7. According to the 1782 (HSBC) Application, the records sought from HSBC USA are "[a]*ll documents and communications relating to* [USG and the Claimant], *including but not limited to any and all account information, information relating to any financial transactions, Wire Transfers, and/or CHIPs or SWIFT payment messages regarding any Wire Transfer*" (**PD-4/61**). As explained in my declaration dated 6 December 2022 in support of the 1782 (HSBC) Application, the Defendants are seeking such information to assist with these proceedings (**PD-4/42**).

8. From information in the public domain, the Defendants learnt that Mr Azari:

(a) in August 2019, was charged in the NY Court with a number of offences relating to computer hacking, including wire fraud, conspiracy to commit hacking and aggravated identity theft (**PD-4/196-205**); and

(b) in April 2022, pleaded guilty to those charges (I exhibit examples of the relevant media reports at **PD-4/206-210**).

9. Further, in October 2022, my colleagues at Gibson Dunn US became aware of records of HSBC USA (the "**Relevant Records**"), which I have since seen, and which appear to show that payments were made from USG to Panolos Limited ("**Panolos**"), a company incorporated in Saint Vincent and the Grenadines and

4

which I understand to be associated with Mr Azari (**PD-4/211-225**), and that payments were made from Panolos to Aviram-Hawk Consulting and Operations Ltd ("**Aviram-Hawk**"), a company incorporated in Israel which also appears to be associated with Mr Azari, and which bears his first name (**PD-4/304-396**). Those payments suggest a business connection between the Claimant and Mr Azari.

10. The Defendants understand that the Relevant Records show payments facilitated by HSBC USA in its capacity as a correspondent bank for USG payments made by USG from its UK bank account to Panolos, and from Panolos to Aviram-Hawk. A correspondent bank is, as I understand it, a third-party financial institution that acts as an intermediary between domestic and international banks, often to service transactions in which the parties are in different countries, or which involve foreign currencies. The Defendants believe that, in addition to the Relevant Records, other records of evidentiary significance exist, are in the possession of HSBC USA in the US, and are accordingly located in the US. These records may include, without limitation, transaction records created by HSBC USA in its role as a correspondent bank relating to, and therefore evidencing, payments made by USG to Mr Azari and/or companies associated with him and/or other individuals who had and/or continue to maintain similar, and potentially commercial, relationships with USG.

11. For example, Mr Rossini, who claims to have previously worked for USG as a contractor, has since testified in his deposition on 13 January 2023 that USG made payments to him from its HSBC bank account (**PD-4/226-228**), for which we assume the correspondent bank will have been HSBC USA.

12. I note in this connection that, in their letter dated 14 June 2022, the Claimant's solicitor, Mr Shlomo Rechtschaffen of Rechtschaffen Law, stated: *"There is no evidence of any link or connection between our client and Mr Azari and nothing pleaded in the public interest defence that your client found any link or connection"* (**PD-4/229-230**). On 27 May 2022, Reuters published an article concerning the Second Defendant's attempts to obtain evidence from Mr Azari via the 1782 process. The article referenced assertions attributed to the Second Defendant that the Claimant and Mr Azari had worked together. Reuters appears

5

to have obtained a statement from Mr Rechtschaffen about the Claimant's purported connections to Mr Azari in advance of publication, given that the article contained the following denial: "*In an email to Reuters, Soriano's lawyer Shlomo Rechtschaffen said that* [the Second Defendant's] *claims were 'false and unfounded' and that the reporter 'has no evidence' that his client and Azari worked together as alleged*" (**PD-4/231-232**). The Relevant Records appear to controvert these statements, and the Defendants believe that the 1782 (HSBC) Application will contain details of the payments identified in the Relevant Records and any other relevant payments.

**Rationale for seeking the records**

13. The Defendants have not to date pleaded a truth defence in relation to the allegation that "*the Claimant is the middle-man for a network of illegal Israeli hacking firms*" (see Publication 8, paragraph 11.6.2 of the Re-amended Particulars of Claim, and paragraph 7.1.2 of the Defendants' Statement of Case on Meaning). Were the Defendants to obtain sufficient evidence that USG had made payments to a convicted hacker, and that such payments were routed through the US and Israel, they would almost certainly seek to amend their Defence to introduce such a plea. Such evidence might also contribute to the Defendants' current plea of truth in relation to the allegation that there are grounds to investigate (or to suspect, if that meaning is preferred by the court) whether the Claimant had knowledge of or involvement in an attempt by the Russian Federation to interfere in the 2016 US presidential election (see paragraph 11.6.1 of the Re-amended Particulars of Claim, paragraph 7.1.1 of the Defendants' Statement of Case on Meaning and paragraph 42(h) of the Defence).

14. Any such amendment should be made as soon as possible. In any event, the Defendants would wish to be in the strongest possible position to prepare for and respond to any potentially adverse decision by the court at the Meaning and Strike Out Hearing. As such, with regard to the Defendants' applications made pursuant to Section 1782, time has been of the essence.

**Subsequent events**

15. On 19 January 2023, the Claimant filed and served on the Defendants the Injunction Application.

16. The following day, on 20 January 2023, the Claimant filed with the NY Court a motion to intervene to oppose the Defendants' 1782 (HSBC) Application and, in the alternative, a motion to stay the 1782 (HSBC) Application (the "**Motion to Intervene or Stay**") (**PD-4/233-256**). The Claimant's key arguments in that Motion to Intervene or Stay are as follows:

    (a) The subpoena requests under the 1782 (HSBC) Application are "*unduly burdensome*" (**PD-4/247-250**).

    (b) The same information sought under the 1782 (HSBC) Application may be obtained from the Claimant himself (**PD-4/249**).

    (c) The 1782 (HSBC) Application is "*an attempt to 'circumvent foreign proof gathering restrictions' of the* [English] *Court*" because (i) the "*sheer breadth of the discovery requested […] resembles a fishing expedition and greatly exceeds the more limited scope of permissible disclosure in the* [English proceedings]", and (ii) "*any relevant information sought by the* [1782 (HSBC) Application] *is also available […] through the disclosure process in the* [English proceedings] (**PD-4/250**).

17. On 23 January 2023, Mr Rechtschaffen informed me and my firm that the court had scheduled a hearing for 6 February 2023 to deal with the Claimant's Injunction Application (**PD-4/258-259**). As described in my firm's email to Mr Rechtschaffen dated 25 January 2023 (**PD-4/258**) and its letter to the court dated 26 January 2023 (**PD-4/260-261**), and Mr Rechtschaffen's response to our email (**PD-4/257**), the Claimant made no attempt to liaise with my firm or the Defendants' counsel in relation to the timing of the hearing.

18. On 27 January 2023, Gibson Dunn US met with counsel for the Claimant in the US, Brown Rudnick LLP ("**Brown Rudnick**"), with the aim of understanding the respective position of the parties, and identifying whether some form of agreement

7

regarding the 1782 (HSBC) Application may be possible. However, despite the efforts of Gibson Dunn US, as detailed in my partner, Anne Champion's email of 30 January 2023 (**PD-4/262-263**), the parties were not able to reach any agreement, Brown Rudnick adopting the position, without advancing any further reasoning, that the 1782 (HSBC) Application should simply not have been issued in any form. In particular:

(a) While Brown Rudnick maintained its opposition to the 1782 (HSBC) Application on the basis that it is unduly burdensome, no explanation was provided by Brown Rudnick as to what burden, if any, the 1782 (HSBC) Application would impose on the Claimant, particularly given the disclosure is being sought from HSBC USA and not from the Claimant himself. For the avoidance of doubt, there is no burden on the Claimant, and HSBC has not complained that the 1782 (HSBC) Application is burdensome, whether unduly so or at all.

(b) My colleagues at Gibson Dunn US understand that the records being sought by the 1782 (HSBC) Application are stored digitally on an electronic database and are readily accessible, and that no manual review of hard-copy documents nor any form of review of electronically-stored information is expected to be required. Realistically, the production of the records should therefore be simple and quick for HSBC USA to handle.

(c) Gibson Dunn US clarified that only financial records of the Claimant and/or his company, USG, that pass through HSBC USA are being sought.

(d) However, Brown Rudnick was not satisfied with the above limitations. Moreover, Brown Rudnick refused to provide any indication as to how the 1782 (HSBC) Application could be narrowed to the satisfaction of the Claimant (whether to make it less burdensome or narrower in scope or to limit on relevance grounds, which were the issues Brown Rudnick had complained of) and maintained that it was not its job to do so.

(e) Gibson Dunn US proposed that the Claimant withdraw his Injunction Application in exchange for the Defendants' consent to the Claimant's motion to intervene in the 1782 (HSBC) Application to allow the parties

to litigate the dispute over the scope of discovery in US federal court. Brown Rudnick rejected this proposal outright.

19. The Defendants are due to file their opposition brief in response to the Claimant's Motion to Intervene or Stay on 3 February 2022.

**Alternatives to the 1782 application**

20. As explained in paragraph 10 above, given that they are in the possession of HSBC USA, the Defendants believe that the records they are seeking to obtain through their 1782 (HSBC) Application are located in the US and outside of this jurisdiction. HSBC USA is neither currently nor expected to be a party to these English proceedings. To obtain documentary evidence from HSBC USA via the English courts, the Defendants would, I understand, be required to serve the application out of the jurisdiction, relying on the so-called "enactment gateway" pursuant to Practice Direction 6B paragraph 3.1(20). They would have to follow the procedures under what is commonly known as the letters of request regime, by making an application for a letter of request to be issued to the designated central authority in the US pursuant to the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "**Hague Evidence Convention**") (**PD-4/264-271**). My colleagues at Gibson, Dunn & Crutcher UK LLP have been advised by the Foreign Process Section at the Royal Courts of Justice ("**FPS**") that the procedures will involve the following steps:

    (a) The Defendants should make an application to the court to request approval for a letter of request.

    (b) If that application is approved the sealed order granted has to be presented to the FPS as a further application to the Senior Master.

    (c) If the letter of request is approved by the Senior Master, the FPS will pass it to the Foreign, Commonwealth & Development Office ("**FCDO**") for transmission to the US.

    (d) The letter of request will be received and reviewed by the US Office of International Judicial Assistance ("**OIJA**").

9

21. I understand it could take several weeks for the letter of request to even be issued by the English courts. Further, having made the relevant enquiries, my team was advised by the FPS that it can take seven to ten working days for the FPS to pass the letter of request to the FCDO and for the FCDO to send the letter to the OIJA. According to the Hague Convention website, upon receipt by the US, the average time for execution of a letter of request is a further two to three months for evidence obtained on a voluntary basis (**PD-4/277**). As such, in the best case, several months would pass before the Defendants could obtain documentary evidence from HSBC USA under the Hague Evidence Convention.

22. By contrast, I understand from my colleagues at Gibson Dunn US that applications made pursuant to Section 1782 for specific disclosure can take as little as a few weeks to proceed through the NY Court. If granted, a subpoena can then be immediately served on HSBC USA. As the US procedure for discovery achieves the same outcome as the English procedure but in a significantly more time- and cost-efficient manner, it is strongly preferred by the Defendants who have limited financial means.

23. I note in this regard that the Hague Convention website highlights making applications under Section 1782 as an alternative to the procedure under the Hague Evidence Convention: *"Under U.S. law, evidence may be obtained without submission of a formal request pursuant to the Hague Evidence Convention. 28 U.S.C. § 1782. It is permissible for a voluntary witness located in the United States to directly provide evidence to a foreign court"* (**PD-4/278**).

24. As the records sought by the 1782 (HSBC) Application are records created by and in the possession of HSBC USA, the Defendants believe that it would be quickest and most efficient for them to seek to obtain such records from HSBC USA through their 1782 (HSBC) Application, instead of seeking and waiting for disclosure of personal banking records from the Claimant in these proceedings, and/or seeking third-party disclosure from USG, which is not a party to these proceedings.

**Claimant's allegations**

25. In his sixth witness statement of these proceedings in support of the Claimant's Injunction Application, Mr Rechtschaffen alleges on two occasions that I have misled the NY Court in my declaration dated 6 December 2022 in support of the 1782 (HSBC) Application. Neither allegation is fair or true:

    (a) First, Mr Rechtschaffen alleges in paragraph 8 that "[i]*nsofar as Mr Doris has given the impression that his clients need the banking information for the strike-out hearing [...] I regret to say that I regard that as having been seriously misleading*" (the "**first allegation**"). Similarly, on 25 January 2023, Mr Rechtschaffen sent my firm a letter complaining about the references to the Meaning and Strike Out Hearing in statements made by the Defendants to the US courts (**PD-4/289-290**): "*You will have seen our objections in the evidence in support of that application to your firm's attempts to justify the evidence-gathering applications in the US by reference to a perceived need to have the evidence in time for the 2-3 March 2023 hearing in London. As you well know, the March hearing is not an evidentiary hearing. We are concerned that your firm is conveying a false impression to the US Courts as to the relevance, utility and urgency of your applications there.*"

    (b) Second, Mr Rechtschaffen alleges in paragraph 10 of his witness statement that "[a]*lthough Mr Doris has given evidence to the SDNY Court that the rationale for proceeding against HSBC Bank USA is that its documents will be outside the territorial scope of an order which the English Court could make, this too is not a fair presentation of the facts*" (the "**second allegation**").

26. In relation to the first allegation, as I explain further at paragraphs 13 to 14 above, the Defendants are seeking the records described at paragraphs 6 to 12 above because they recognise that, in connection with the Meaning and Strike Out Hearing, they may need to consider seeking to amend their Defence to account for the meanings determined by the court and/or to substitute, add to and/or contribute to their currently-pleaded defences. The Meaning and Strike Out Hearing is a

11

crucial juncture in the litigation (as no doubt the Claimant intends) and it is certainly not misleading to make that clear to the NY Court.

27. Furthermore, it should be noted that this allegation was first raised in a letter from Rechtschaffen Law on 21 October 2022 (**PD-4/300-301**). In that letter, it was alleged that a letter sent by Gibson Dunn US to the NY Court dated 19 October 2022 (**PD-4/302-303**) had been misleading on the basis that the Gibson Dunn US letter had stated that *"the underlying U.K. proceeding has fast-approaching deadlines with respect to upcoming evidentiary hearings"*. In fact, prior to the NY Court being required to consider that letter, Gibson Dunn US and Mr Azari's counsel had already reached agreement to hold Mr Azari's deposition on 2 November 2022. Gibson Dunn US wrote to the NY Court on 20 October 2022 to withdraw its letter of 19 October 2022. The NY Court accepted the letter's withdrawal. On 1 November 2022, Gibson Dunn wrote to Rechtschaffen Law explaining the above and providing the relevant evidence (**PD-4/291-292**).

28. In relation to the second allegation, as I describe in paragraph 25(b) above, the Defendants are seeking to obtain records held by HSBC USA, which may relate to the Claimant and/or USG. For this reason, the Defendants believe that the records sought are located in the US and have made the 1782 (HSBC) Application requesting HSBC USA to disclose them. As made clear by Gibson Dunn US to Brown Rudnick, the Defendants are seeking only records of transactions that pass through HSBC USA. It is not the purpose of the 1782 (HSBC) Application to seek records in the possession of an entity other than HSBC USA, such as HSBC UK Bank plc or HSBC Bank plc, both incorporated in this jurisdiction.

**Forum**

29. As mentioned in paragraph 16 above, the Claimant filed with the NY Court his Motion to Intervene or Stay on 20 January 2023, and the Defendants are due to file their opposition brief in response by 3 February 2023. The Claimant's opposition to the 1782 (HSBC) Application is currently being dealt with as part of the judicial process in the NY Court. I understand from colleagues that the NY Court will then proceed to make a decision on the Defendants' 1782 (HSBC) Application.

12

30. The Injunction Application and the Motion to Intervene or Stay share the same purpose of restraining the Defendants' 1782 (HSBC) Application. On any analysis, the Injunction Application is duplicative of the proceedings in the NY Court. By pursuing the proceedings concurrently in two jurisdictions, the Claimant is creating unnecessary inconvenience and expense for the Defendants, requiring them to respond to the Injunction Application in this jurisdiction and attend a hearing that has been listed for 6 February 2023 to deal with the Injunction Application, in addition to filing an opposition brief with the NY Court.

31. The Claimant has not put forward any evidence to justify these duplicative proceedings, or of any advantage that would be available to him only by way of the Injunction Application in this jurisdiction, of which it would be unjust to deprive him. The proper course of action for him throughout has been to file, as he subsequently did, a Motion to Intervene or Stay with the NY Court. The only substantive argument which Brown Rudnick has raised in their discussions with Gibson Dunn US is that the 1782 (HSBC) Application is unduly burdensome. That is an argument available to the Claimant in the NY Court where it will be decided as a matter of US law. The present Injunction Application is unnecessary.

32. In my firm's email of 25 January 2023 (**PD-4/257-258**), we invited the Claimant to withdraw his Injunction Application. Mr Rechtschaffen's response (**PD-4/257**) is that "[t]*here is no inconsistency between our client's intervention in New York and his anti-suit application in London*", even though it is apparently recognised that the Claimant's proceedings in both jurisdictions have a common goal: "[i]*n both forums he is arguing that the steps you are taking are unjustified and inappropriate*".

**Conclusion**

33. The Defendants request that the English court decline jurisdiction in relation to the Injunction Application on the basis that the proper course of action for the Claimant and venue for consideration of the appropriateness of the Defendants' 1782 (HSBC) Application is the Motion to Intervene or Stay, with which the NY Court is already dealing.

34. Alternatively, and in any event, the Defendants request that the court dismiss the Claimant's Injunction Application on the basis that the Defendants' 1782 (HSBC) Application is, in all the circumstances, legitimate and reasonable, as I explain in this statement, and in any event cannot reasonably be characterised as vexatious, oppressive or unconscionable.

**Statement of truth**

I believe that the facts stated in this witness statement are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

...................................................

**Patrick Doris**

1 February 2023