UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of FORENSIC NEWS LLC and SCOTT STEDMAN for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 1:22-mc-347-AT |

**REPLY IN SUPPORT OF WALTER SORIANO'S MOTION TO
INTERVENE AND, IN THE ALTERNATIVE, MOTION TO STAY**

In support of their 28 U.S.C. § 1782 application (the "Application"), Petitioners Forensic News and Scott Stedman ("Petitioners") once again seek to justify their attempt to discover broad and unfettered confidential financial information, circumventing UK discovery restrictions, through numerous misrepresentations of fact and law.

Petitioners continue to intentionally misrepresent the urgency of their request as well as the procedural posture of the defamation proceedings in the UK (the "UK Action"), painting an inaccurate portrait of both the UK Action and their purported need for the requested discovery. Specifically, Petitioners purport to seek broad third-party discovery from HSBC Bank USA ("HSBC USA")—requesting over ***sixteen years'*** worth of documents and communications, without limitation—allegedly "to ***amend*** their defense in the English Defamation Action" (Dkt. No. 18, at 7) (emphasis added), knowing full well that English libel law does not, at this stage, permit such discovery aimed at allegations that are not already pled in the current pleadings. In fact, the High Court explicitly acknowledged this in its Approved Judgement on the Anti-Suit Injunction, issued on February 10, 2023 (the "Judgment"). Declaration of Shlomo Rechtschaffen

1

("Decl.") at ¶ 6, Ex. B at ¶¶ 28, 44. This is precisely why Petitioners commenced this separate proceeding in a foreign jurisdiction to compel discovery from a third-party: they are seeking to evade this restraint of UK law so they can go on a fishing expedition.

Petitioners also continue to intentionally misstate the purpose and posture of the March 2 and 3, 2023 hearings (the "March UK Hearings"), falsely suggesting that the requested discovery is urgently needed "in connection with" those hearings. *See id.* But the discovery sought by the Application has nothing to do with those hearings, as it comprises no more than an attempt to fish for as yet unpled defenses in the UK Action, which is barred under UK libel law at this stage in the case. Moreover, as previously noted in Mr. Soriano's motion, the High Court will not hear any evidence at the March UK Hearings, which are based solely on the pleadings.

Similarly, Petitioners attempt to discredit Mr. Soriano's arguments by repeatedly characterizing him as a "libel tourist," despite rulings from both the English High Court of Justice and the Court of Appeal expressly declaring otherwise and finding that Mr. Soriano's libel claims were properly brought in the UK. If anything, Petitioners' attempt to obtain discovery in a new forum, which is unavailable to them at this time in the UK, constitutes improper forum shopping that should not be rewarded.

Petitioners effectively concede, by not opposing, Mr. Soriano's motion to intervene, which the Court should allow as of right. Petitioners contend that Mr. Soriano's stay request should be mooted by the latest ruling by the UK Court on his Anti-Suit Injunction, but as detailed herein, that ruling suffers from critical error and is subject to reversal on appeal. For all of these reasons, as well as those set forth in Mr. Soriano's Motion, this Court should permit Mr. Soriano to intervene in this matter and, concurrently, exercise its broad discretion to deny the Application on the bases articulated in Mr. Soriano's opposition to the Application, or, in the

alternative, stay an order on the Application pending full resolution of Mr. Soriano's Anti-Suit Injunction.

## ARGUMENT

I. **The Court Should Grant Mr. Soriano's Unopposed Motion to Intervene and Deny Petitioners' Application.**

As a threshold matter, Petitioners do not oppose Mr. Soriano's motion to intervene, as there is no dispute that he satisfies the requirements for intervention as of right under Fed. R. Civ. P 24(a). For that reason, and those set forth in Mr. Soriano's Motion to Intervene, Opposition to the Application, and, in the alternative, Motion to Stay (the "Motion," Dkt. No. 16), the Court should allow Mr. Soriano to intervene as of right to protect his interests in both this proceeding and in the UK Action. As detailed in Mr. Soriano's Opposition to the Application (*id.*), the Court should also exercise its broad discretion to deny the Application as patently overbroad and a reflection of Petitioners' bad faith in attempting to circumvent the present restraints of English law. *See id.*; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).

II. **Alternatively, the Court Should Stay this Matter Pending Final Resolution of the Anti-Suit Injunction.**

Though the High Court has now entered a Judgement denying the Anti-Suit Injunction, Mr. Soriano's motion, in the alternative, to stay discovery pending final resolution of the Anti-Suit Injunction is not moot, as Mr. Soriano intends to seek an expedited appeal of that decision. *See* Decl. at ¶ 6. As detailed herein, a stay is still warranted because (1) Mr. Soriano is likely to succeed on the merits of his appeal in the UK Action; (2) the disclosure of years' worth of sensitive and confidential financial information risks irreparable damage to Mr. Soriano; (3) Petitioners have failed to identify any injury from a stay; and (4) the public interest heavily favors the interests of comity and judicial efficiency. *See In re World Trade Center Disaster Site*

*Litig.*, 503 F.3d 167, 170–71 (2d Cir. 2007) (internal quotation marks and footnote omitted); *see also* Decl. at ¶ 5, Ex. A.

    A.    **Mr. Soriano's Appeal is Likely to Succeed.**

The Court should enter a stay because Mr. Soriano intends to seek an expedited appeal of the High Court's ruling on the Anti-Suit Injunction, which is likely to succeed on the merits. Critically, the High Court's ruling errs in its treatment of established English libel law, in which it has been held to be "very bad precedent to suggest that a person can simply by libelling another obtain access to all his books and see whether he can justify what he has said or not." *Yorkshire Provident Life Assurance Co v Gilbert* [1895] 2 QB 148, 152 per Lindley LJ9. This is precisely the nature of Petitioners' attempted fishing expedition against Mr. Soriano in this forum. Though Petitioners claim that the requested discovery—which seeks *all* documents and communications involving Mr. Soriano and USG dating back over *sixteen years* to 2007—is "highly relevant to Petitioners' truth defense" (*see* Dkt. No. 18, at 14), it is in fact an improper attempt to explore discovery to support allegations that *have not yet been pled*. Petitioners seek unfettered access to Mr. Soriano's books to see if there is any basis to *amend* their defense (*see id.*), which, if permitted, would contravene established English law. *See Yorkshire Provident*, *supra* (disclosure not appropriate to "see whether [they] can justify what [they have] said or not").

As Petitioners acknowledge, under English libel law, "a defamation *defendant* bears the burden of establishing the truth of the reporting." Dkt. No. 18, at 6. An important procedural consequence of this principle under UK libel law is that the defamation defendant is required to specifically plead how he or she proposes to justify the defamatory statement before he or she is entitled to any discovery on that issue. As such, Mr. Soriano is likely to succeed on appeal in the

4

UK in demonstrating that Petitioners' Application seeks discovery to amend their defenses, not justify an existing defense.

In a letter submitted to the Court this morning, Petitioners now contend that the High Court's decision "confirms the lack of merit to Soriano's argument that Petitioners' Section 1782 application improperly seeks to 'circumvent foreign proof-gathering limits'" and "confirms that the third discretionary *Intel* factor weighs in favor of Petitioners." *See* Dkt. No. 20. Not so. The High Court merely acknowledged that "it is legitimate to seek the assistance of a foreign court" to obtain discovery, not that the *breadth* of the discovery sought by Petitioners is legitimate. *See* Decl. at ¶ 6, Ex. B at ¶ 49 (declining to opine on the Application's "breadth as to scope of document sand timeframe and the confidential and potentially sensitive nature of the financial disclosure sought"); *see also Intel*, 542 U.S. at 266 (holding that "§ 1782(a) authorizes, but *does not require assistance*," so it is up to the court to "determine what, if any, assistance is appropriate" (emphasis added)). To be clear, it is the *breadth* of the discovery Petitioners seek in their Application that flies in the face of English "proof-gathering limits" and the policy underly English defamation law. *See Intel*, 542 U.S. at 265 (holding a district court should consider whether a § 1782(a) request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country"). Petitioners could not seek such broad discovery in the UK Action, so Petitioner's Application can *only* be viewed as a brazen attempt to circumvent the restrictions on discovery imposed in the UK Action. Under *Intel*, this *does* weigh against granting the assistance requested in the Application and weigh in favor of a stay.

**B. Mr. Soriano Risks Irreparable Harm Absent a Stay.**

Petitioners' contention that Mr. Soriano faces no irreparable harm by the disclosure sought willfully ignores the extraordinary overbreadth of the requested discovery. *See* Dkt. No.

5

18, at 19. Indeed, Petitioners attempt to justify a request for all documents and communications spanning over sixteen years by citing to a single allegation, from their own reporting, that Mr. Soriano was "likely" a "big donor" to Israeli Prime Minister Benjamin Netanyahu's 2007 presidential campaign. *See id.* at 17. Petitioners provide no explanation for how this single allegation of donations limited to 2007 could possibly necessitate the production of over sixteen years' worth of documents and communications, without limitation. Petitioners' reference to the "onset of Soriano's employment by Ruth Parasol," their alleged source for statements regarding Mr. Soriano's military service and claims that he had "killed people," in 2008, without any suggestion of how Mr. Soriano or USG's banking records and correspondence might corroborate these statements, is likewise confounding. *See id.* The wholly unjustifiable disclosure of Mr. Soriano's and USG's confidential financial records going back over sixteen years risks irreparable harm to Mr. Soriano and his business interests. A stay is therefore warranted.

**C. A Stay Will Not Harm Petitioners.**

Petitioners' contention that they will be substantially injured by a stay deliberately misrepresents the posture of the UK Action. Petitioners have repeatedly asserted that the requested discovery is needed in advance of the March UK Hearings. But, as Mr. Soriano explains in his Motion (*see* Dkt. No. 16, at 2 n.1), the discovery sought in the Application is <u>not</u> relevant to the issues to be heard by the High Court at these hearings, which will be limited to a preliminary trial on the meaning of the publications at issue, together with Mr. Soriano's application to "strike out" parts of the Petitioners' defense as already pled, and as such will not involve the introduction of any evidence. *See id.* Indeed, even assuming that Petitioners' fishing expedition were granted here and any evidence supporting a new defense obtained, Petitioners would, as they acknowledge, seek to amend their defense, which would have nothing to do with

the attempt to strike out parts of their defense as it currently stands. In sum, a stay of this discovery will not impact Petitioners' case in the UK Action.

Moreover, Petitioners' suggestion that the balance of equities tilts against Mr. Soriano on the basis that he is a "libel tourist," has been expressly rejected by the High Court and Court of Appeals in the UK, both of which concluded that Mr. Soriano's suit was properly brought in England. *See* Dkt. Nos. 17-1, at 34; 17-2, at 12. Indeed, Petitioners' own attempt at forum-shopping here, seeking to circumvent restraints on discovery under English law through Section 1782, further tilts the balance of equities in favor of a stay.

**D. The Interests of Comity and Judicial Efficiency Compel a Stay.**

Petitioners' argument on the public interest factor also rests on their discredited refrain that Mr. Soriano is a "libel tourist." *See* Section C, *supra*. In light of English libel law as discussed herein, the interests of comity weigh strongly in favor of a stay. Indeed, "section 1782 cannot be said to ignore those considerations of comity and sovereignty that pervade international law. A grant of discovery that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782." *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985). In the substantial interests of international comity, the Court should grant a stay.

## CONCLUSION

For the reasons set forth herein and in the Motion, the Court should grant Mr. Soriano's motion to intervene, deny Petitioners' Application in its entirety and, alternatively, stay a determination on the Application pending final resolution on appeal of Mr. Soriano's parallel Anti-Suit Injunction.

Dated: New York, New York
February 10, 2023

                                      Respectfully submitted,

**BROWN RUDNICK LLP**

By: *Jessica N. Meyers*
Jessica N. Meyers
7 Times Square
New York, New York 10036
jmeyers@brownrudnick.com
Tel: (212) 209-4938
Fax: (212) 209-4801

Benjamin G. Chew (*pro hac vice* forthcoming)
601 Thirteenth Street, N.W.
Washington, D.C. 20005
bchew@brownrudnick.com
Tel: (202) 536-1785

Camille Vasquez (*pro hac vice* forthcoming)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
cvasquez@brownrudnick.com
Tel: (949) 752-7199

*Attorneys for Walter Soriano*